W. L. STEWART, J. B. STEWART, MARY ELIZABETH PERKINS, NORA HEDGPETH, RALPH E. STEWART, VERNA McDANIEL, and EARL MIKESELLI v. WM. T. SHELTON, WALLACE B. SHELTON, THEODORE SHELTON, LaMOINE SHELTON, GARY SHELTON, a minor, JESSIE SHELTON, GRACIE STEWART and JOSIE STEWART, Appellants.— No. 39928.—201 S. W. (2d) 395.

Division One, April 21, 1947.

*Thomas H. Gideon* and *R. A. Moneyham* for appellants.

*Arch A. Johnson* for respondents.

CONKLING, J.—Suit in equity and for a declaratory judgment decreeing the joint will of J. T. Stewart and Josie Stewart, his wife, executed August 6, 1943, to have been irrevocable by Josie Stewart from and after the death of J. T. Stewart, and praying a decree setting aside four certain deeds to the lands devised by the joint will, which deeds were executed by Josie Stewart after the death of J. T. Stewart. The decree of the court below declared that upon the death of J. T. Stewart the joint will became and was the irrevocable last will of the widow, Josie Stewart, and set aside the four deeds in question. Defendants appealed.

Study of the transcript of the evidence discloses that the "Finding of Facts" made by the trial court correctly and fairly states the material matters which the evidence adduced tended to prove and we here use some of it without quotation marks. J. T. Stewart and Josie

Stewart owned 320 acres of land in Greene County as tenants by the entirety. They had no children. J. T. Stewart had five brothers and sisters, Josie had three. The above were the next of kin and the probable heirs. In the spring of 1943, both being well advanced in years, J. T. and Josie Stewart discussed the disposition of their real estate. Each understood that the survivor would take absolute title on the death of one of them, and unless some provision was made, the heirs of the survivor would eventually get all the land, to the exclusion of the heirs of the first to die. On August 5, 1943, J. T. and Josie drove to Republic, Missouri, and advised Bruce DeWitt, a lawyer, that they desired to make a joint will. The next day DeWitt and his daughter went to the Stewart home. The Stewarts and the attorney discussed the full situation of the proposed joint will. Josie participated in the discussion and both Stewarts fully agreed as to how they desired the will drawn. The Stewarts explained that they had no children; that J. T. had five brothers and sisters and Josie had three; that they desired the survivor of the two of them to have full enjoyment of the land as long as he or she lived and that at the death of the survivor each of their eight brothers and sisters were to have an undivided one-eighth interest in the 320 acres. The joint will as written so disposed of the land. DeWitt told the Stewarts that such a joint will as they desired him to prepare could be revoked by either while both lived, but that after the death of one, the survivor could not revoke it. Both Stewarts said that was their agreement, and that was the way they wanted it. DeWitt dictated the will to his daughter, who there typed it as he dictated. The will was read to the Stewarts who said that was the way they wanted it. The will, a single instrument, was then signed by both J. T. Stewart and Josie Stewart, and was published in the presence of witnesses. In May, 1944, J. T. Stewart died. The joint will had not been theretofore revoked by either J. T. or Josie Stewart. The will was probated in July, 1944. Thereafter Josie went to live with one of her brothers, Wm. T. Shelton. Soon thereafter, and without consideration, she executed the four deeds conveying the land, eighty acres to her brother, Wm. T. Shelton; eighty acres to Wallace B. Shelton (son of Wm. T.) and his bodily heirs; eighty acres to Frank Shelton (another brother) and his bodily heirs, and eighty acres to Theodore Shelton (son of Frank) and his bodily heirs. The amended petition alleged these four deeds were procured by fraud and coercion of Wm. T. Shelton, but at the trial that charge was abandoned. Later Josie repented the execution of those deeds and wrote letters (which were in evidence and are now filed here) stating she executed the deeds as the result of grief and weakness caused by talk of her relatives having a guardian appointed for her; that she was sorry she had signed the deeds and desired to undo "those unlawful deeds"; that she had no right to deed the land as she had only a lifetime claim

on it; that she did not want to take Tommy's (her husband's) land and "give it to my people"; that she had so stated to Tommy; that the will was just and right; that she had signed it cheerfully and willingly and wanted it to stand. Later Josie told others the same things saying also that she had tried to get the deeds back and could not. Josie was greatly distressed over having signed the deeds. She told neighbors that she and her husband had agreed on a disposition of the land and had made a joint will accordingly. In the fall of 1945 Josie instituted this action in the Greene County Circuit Court as sole plaintiff against the grantees in the deeds, as defendants, alleging the joint will was executed pursuant to a prior agreement with her husband, and charging fraud and coercion of Wm. T. Shelton in procuring the execution of the four deeds. Thereafter all the devisees under the will, except Wm. T. and Frank Shelton, became additional parties plaintiff to this action. Those devisees are now plaintiffs herein. Later Josie executed a stipulation to dismiss this action. It was dismissed as to her but not as to the six devisee plaintiffs. An amended petition was then filed making Josie a party defendant. The joint will in question, denominating itself to be the "Joint Will, Last Will and Testament of J. T. Stewart and Josie Stewart, Husband and Wife", disposes of "our property", in "our joint will and testament". By the joint will nothing at all was left by either testator to the other and nothing passed under the will on the death of the first to die. The will provided "this joint will shall be in full force and effect from and after the death of the survivor herein."

■ Appellants first contend that the amended petition upon which the case was tried is fatally defective because it states no cause of action and is wholly insufficient to permit the relief decreed, and contend respondents should be compelled to resort to an action at law for damages for a breach of the contract to make an irrevocable will. With these contentions of appellants with respect to the insufficiency of the petition and as to the propriety of the form of the action we cannot agree.

The character of the action, the issues raised by the pleadings and the relief sought in the instant case are cognizable by a court of equity. Relief by declaratory judgment is sui generis, and while not either strictly legal or equitable, yet its historical affinity is equitable. Liberty Mutual Insurance Co. v. Jones, 344 Mo. 932, 955, 130 S. W. (2d) 945, Mutual Drug Company v. Sewall, 353 Mo. 375, 182 S. W. (2d) 575. The declaratory judgment statutes, R. S. Mo. 1939, Sec. 1126, et seq., and specifically R. S. A. sec. 1127 states that "any person *interested under any deed, will,* written contract or other writings constituting a contract . . . *may have determined any question of . . . validity arising under the instrument* . . . and obtain a declaration of rights, status or other legal relations thereunder" (emphasis ours). By the instant pleadings a justiciable controversy

was presented by a person entitled to invoke the declaratory judgment act and the issues brought into the court nisi were ripe for judicial determination. City of Joplin v. Jasper County, 349 Mo. 441, 160 S. W. (2d) 411. If the joint will be determined to have been irrevocable upon and after the death of J. T. Stewart the devisee plaintiffs-respondents have each an undivided one-eighth interest in the remainder in and to the 320 acres. Respondents are therefore interested under the will and are entitled to have its validity as an irrevocable instrument determined and declared in this character of proceeding. Merely that appellants do not approve the form of the action by which respondents seek to enforce their remedy, merely that respondents did not plead with more particularity and in greater detail the inadequacy of any legal remedy or the details or consideration of the claimed contract to make an irrevocable will cannot now avail appellants here. The declaratory judgment statutes are remedial in character. It is their purpose to afford relief from uncertainty and insecurity. They contemplate judgments which stabilize and determine rights. We are admonished by such statutes that they are to be liberally construed. Respondents had a right to and did choose the form of their action, and that form is agreeable to the law for the issues presented. The petition set out the joint will in *haec verba*, alleged the will was made pursuant to a contract and prayed a declaratory judgment decreeing irrevocability by Josie after the death of J. T. Stewart. The answer of defendants expressly denied that there was any such contract. The trial court affirmatively found there was such a contract. The petition states a cause of action. If the petition had been deficient in form or substance, which it was not, it may be observed that appellants filed no motion for a more definite statement or bill of particulars and the issues raised were tried in the court below with consent of the parties and without objection. Laws of Missouri, 1943, pages 375, 378, R. S. A. sec. 847.63 and 847.82. We rule the assignment against the appellants.

 It is next contended that estates by entirety are not subject to testamentary disposition of the character here made. This brings us to the heart of the controversy presented. Was the estate of testators held by entirety a proper subject matter of such a joint will? Did J. T. Stewart and Josie Stewart agree between themselves in substance as follows: "Regardless of which one of us dies first, your brothers and sisters and my brothers and sisters shall each receive an equal share in our joint property", and was the will thereafter drawn on August 6, 1943, executed pursuant to that agreement? We think these questions must be affirmatively answered.

We are cited to no authority and we do not find any that an estate held by entirety may not be devised under the circumstances shown by the instant facts. Nor upon principle do we see any reason why a husband and wife may not under these circumstances make joint

testamentary disposition of an estate by entirety. An estate by entirety in Missouri is the same as a common law estate by entirety. Husband and wife have unity of interests, unity of title, unity of time and unity of possession. Ahmann v. Kemper, 342 Mo. 944, 119 S. W. (2d) 256. The essential characteristic is that each spouse is seized of the whole or entirety and not of a share, moiety or divisible part. While neither spouse has any right, title or interest which may be conveyed, encumbered or devised by his or her *sole* act, and while one spouse acting alone cannot defeat the right of the other to take the entire estate as survivor, or do anything to affect the right of survivorship, yet by agreement and joint act the two by will may devise a remainder over after life enjoyment by the surviving spouse. Samuel v. Frederick (Mo. Sup.), 262 S. W. 713, Baker v. Lamar (Mo. Sup.), 140 S. W. (2d) 31, 41 C. J. S. 461, 464, 465, 466, Seat v. Seat, 113 S. W. (2d) (Tenn.) 751. In the instant case neither spouse acting separately and alone did anything to impair the full enjoyment, present or future, of the other. Acting jointly, as they could and did do, the husband and wife merely agreed by their joint will that after they both were deceased that their estate held by them by entirety should go to all of the brothers and sisters of the two of them. That they had full power to do.

 The will in question was joint. It was also mutual and irrevocable. In stating the requirements of mutual and irrevocable wills, we said in Plemmons v. Pemberton, 346 Mo. 45, 139 S. W. (2d) 910, 914: "It is well settled that reciprocal and mutual wills . . . if not founded on, or embodying, any contract may be revoked, like ordinary wills, at the pleasure of the person making them, without entailing any violation of contract. 69 C. J., p. 1299. However, a contract to make mutual wills to remain unrevoked at the death of the parties, is valid and enforcible if fair and just, definite and certain in its terms and as to subject matter and based upon a sufficient consideration", etc. Courts usually uphold joint wills as irrevocable where it appears that the testators of such a joint will contracted to make it. 43 A. L. R. 1020; 57 A. L. R. 609; 60 A. L. R. 627; 102 A. L. R. 491. In Watkins v. Covington Trust & Banking Company, 198 S. W. (2d) (Ky.) 964, it is held that where a joint will is found to be based upon a contract the estate thereby devised was impressed with a trust which may be enforced in equity. It is required that (1) there should have been a definite agreement, fair and just and certain as to terms and subject matter to dispose of the property as the will provided, (2) that such agreement be based upon a sufficient consideration. Such a contract, while it must be proved by clear, cogent and convincing evidence, need not be proved by writing or direct evidence, but may be established by oral testimony and circumstances. Plemmons v. Pemberton, supra, In re Estate of Opel v. Aurien, 352 Mo. 592, 600, 179 S. W. (2d) 1. Those requirements have been met

in this case. Josie Stewart's statements both before and since her huband's death respecting her agreement with her husband about the disposition of their property; her letters above referred to; the statements of J. T. and Josie Stewart before and at the writing of the joint will; the fact that the will itself is but a single instrument and was executed by both the husband and wife at the same time after preparation by an attorney in the presence of and with the full collaboration of each; their understanding that after the death of one of them the survivor could not revoke the will and their acceptance of that condition; Josie's remorse after having broken faith with her dead husband by executing the deeds the original petition filed by Josie alleging the contract with her husband and the execution of the will in accordance with such contract; the provision of the will that "this joint will shall be in full force and effect from and after the death of the survivor herein" could lead the chancellor, and this court, to but one conclusion upon the contract issue.

In Seat v. Seat, 113 S. W. (2d) (Tenn.) 751, a case substantially identical on facts with the instant case, and wherein J. T. Seat and Carrie M. Seat, his wife, by joint will disposed of their estate held by entirety to the heirs at law and next of kin of both the husband and wife, the court said: "The terms of the joint will, the fact that the greater part of the real estate was held by the entirety and might have passed to the survivor, that the property was acquired by the parties and owned jointly or in common, that defendant left the will in force from the date of execution until her husband's death, and the equitable manner in which the parties disposed of their joint and common property, authorizes the inference that some sort of domestic prearrangement was made by Mr. and Mrs. Seat looking to an equitable division of their property and which culminated in their joint will. As said in Harris v. Morgan, 157 Tenn. 140, 153, 154, 7 S. W. (2d) 53, such facts negative any conclusion but that the will was executed pursuant to agreement. See, also, Frazier v. Morgan, 12 App. Cas. 445.

"If Mr. Seat had survived his wife and could have revoked their joint will, he would have succeeded to all of the estate by the entirety and her brother and sister could have had no share of it. Mr. Seat observed the arrangement they had made and so did Mrs. Seat, until her husband's death, and when she might have, in the absence of some prearrangement, succeeded to all the estate by the entirety. She cannot now be heard to repudiate her contract evidenced by the joint will and the surrounding circumstances in so far as her dissent affects the joint disposition of half ▆▆▆ the estate in remainder to the heirs of J. T. Seat."

The agreement between J. T. and Josie Stewart that the joint will should be irrevocable after the death of the first of the testators to die stands established in this record by the preponderance of the

clear, cogent and convincing evidence. It was here proved by direct testimony. The chancellor so found and we approve his finding and decree.

The will was eminently fair and just and was without preference to any person or either set of brothers or sisters. Certainly the mutual promise of each testator to the other testator that his or her brothers and sisters should have an equal share and only an equal share with the brothers and sisters of the other testator was sufficient consideration for the mutual agreement. Neither could know at the time the will was made which one of them would be first deceased. The promise of one with its resultant benefits to inure to the brothers and sisters of that one was consideration for the promise of the other, with benefits likewise to inure. The evidence shows a mutual interest of the two testators in all the beneficiaries under the will. That the agreement between J. T. and Josie Stewart was certain as to its terms and subject matter is supported by the oral testimony and by the joint will itself.

We have examined the cases cited by appellants. Some of the cases cited hold a joint will to have been irrevocable after one testator had accepted benefits under the will after the death of the first testator. None of the cases hold, however, that any estoppel is necessary before a joint will can be held to be irrevocable. The irrevocability must in any event be logically based upon the existence of the contract and not upon an estoppel.

The findings and decrees of the trial court are amply supported by the evidence. Upon such evidence and in deference to the action of the chancellor his judgments and decrees herein must be and are hereby affirmed.

It is so ordered. All concur.