Ted E. ARRINGTON, Agnes Arrington and Alma Catherine Arrington, Executrix of the Estate of Ted E. Arrington, Plaintiffs-Respondents,

v.

WESTPORT BANK, Rosemary Walton, Virginia Taliaferro, Donald T. McCall and Sheralyn R. McCall (now Wink), Defendants-Appellants.

No. KCD 29939.

Missouri Court of Appeals, Western District.

Jan. 29, 1979.

Howard F. Sachs, Kansas City (Spencer, Fane, Britt & Browne, Kansas City, of counsel), for defendants-appellants.

Albert Thomson, Robert B. Thomson, Kansas City (Linde Thomson Fairchild Langworthy & Kohn, Kansas City, of counsel), for plaintiffs-respondents.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

The individual defendants appeal in a court-tried case from a judgment for plaintiffs in complex litigation involving the wills of Frank and Jean Arrington.

The action was brought by Agnes Arrington and Alma Arrington as plaintiffs against Virginia Taliaferro, Rosemary Walton, Donald T. McCall, and Sheralyn R. Wink, and the Westport Bank as Executor of the will of Jean Arrington. Agnes Arrington is the sister of Frank Arrington, and Alma Arrington is the widow of Ted Arrington. Agnes and Ted were legatees in the Frank Arrington will. The individual defendants, Virginia Taliaferro and Rosemary Walton, are both heirs of Jean Arrington and Legatees under her will. The defendants, Donald McCall and Sheralyn Wink, are, respectively, nephew and niece of Jean Arrington and constitute the remainder of her heirs.

Simply stated, the position of the plaintiffs is: first, that the will of Jean Arrington, construed with the aid of the will of Frank Arrington, divided the property into fourths with nothing passing by intestate succession; and, second, that the wills of Frank and Jean Arrington, with the extrinsic evidence, constitute a contract enforceable in equity to divide their joint estates in fourths.

Thus, if plaintiffs prevail, plaintiffs Alma Arrington, Agnes Arrington, and defendants Rosemary Walton and Virginia Taliaferro will each receive one-fourth of the property. If the defendants prevail, the disposition will be one-fourth each to Virginia Taliaferro and Rosemary Walton as legatees of the will of Jean Arrington, with the remaining one-half being divided among Virginia Taliaferro, Rosemary Walton, Donald McCall, and Sheralyn Wink in accordance with the statute of descent and distribution.

The complex and unique facts of this controversy are as follows: Jean Arrington died in 1975, having survived her husband, Frank Arrington, who died in 1969. The real estate owned by the parties, valued at approximately $53,000, was held as a tenancy by the entirety. At the time of the death of Jean Arrington, she owned stocks, bonds, bank accounts, and other personal property valued at approximately $30,000.

The record is silent as to the origin or manner in which the personal property is titled except that one item of approximately $2,000 represents Jean Arrington's one-eighth share of proceeds of Oklahoma litigation. The connection of Jean Arrington to this litigation is not shown in the record, but there is an inference from a letter from Jean Arrington to Ted and Alma Arrington that the litigation may have involved the Arrington branch of the family. The will of Jean Arrington was offered and admitted to probate. At the same time, the will of Frank E. Arrington was filed in the Probate Court. For convenience, the wills are here reproduced in their entirety side by side, omitting formal recitals and the signatures and attestation clauses.

First: I hereby direct that it is my will that all just debts and any remaining funeral expenses be paid out of the estate now held in joint tenancy by myself and my husband, Frank E. Arrington.

Second: At the time of my death, all right, title and interest in all property now held in joint tenancy by myself and my husband, Frank E. Arrington, including any future inheritance or gains in the estate, shall pass to my husband, Frank E. Arrington.

Third: At the time of decease of both myself and my husband, Frank E. Arrington, one half of all remaining property shall be given in equal shares, one-fourth to my sister, Mrs. Virginia Taliaferro, 4837 West 76th Street, Shawnee Mission, Kansas or her heirs, and one fourth to my niece, Mrs. Rosemary Walton, 2604 Garden Park Drive, Fort Wayne, Indiana or her heirs.

Fourth: At the time of decease of both myself and my husband, Frank E. Arrington, I do hereby direct that the Westport Bank, 331 Westport Road, Kansas City, Missouri, be appointed executor to administer the estate. * * * "

First: I hereby direct that it is my will that all just debts and any remaining funeral expenses be paid out of the estate now held in joint tenancy by myself and my wife, Jean E. Arrington.

Second: At the time of my death, all right, title and interest in all property now held in joint tenancy by myself and my wife, Jean E. Arrington, including any future inheritance or gains in the estate, shall pass to my wife, Jean E. Arrington.

Third: At the time of decease of both myself and my wife, Jean E. Arrington, one half of all remaining property shall be given in equal shares, one fouth to my sister, Miss Agnes Arrington, 431 North Pershing, Liberal, Kansas or her heirs and one fourth to my brother, Mr. Ted E. Arrington, 3266 Central, Spring Valley, California or his heirs.

Fourth: At the time of decease of both myself and my wife, Jean E. Arrington, I do hereby direct that the Westport Bank, 331 Westport Road, Kansas City, Missouri, be appointed executor to administer the estate. * * * "

Jean Arrington's will was dated July 30, 1968, and Frank Arrington's will was dated July 27, 1968. There is one witness common to both wills.

There is no evidence in the record one way or the other concerning statements by Jean or Frank Arrington *prior* to the execution of the documents. There is no evidence of any statements at the time of the execution of the documents. Mr. and Mrs. Henderson, neighbors of the Arringtons, witnessed the Frank Arrington will. Mrs. Henderson and a Sue Newsome, then a neighbor, witnessed the Jean Arrington will. There is no evidence concerning a possible scrivener of the wills. Copies of the wills were received by the Westport Bank in the mail under a cover letter signed by Frank Arrington, dated August 9, 1968. The Westport Bank did nothing about the Frank Arrington estate upon Frank Arrington's death February 15, 1969. There is evidence of statements by Jean Arrington after Frank Arrington's death concerning the disposition of the property. Jean Arrington told her sister close to the time of the execution of the wills that her sister (Virginia Taliaferro) was to receive one-fourth of her property and that Rosemary Walton was to get one-fourth. At about the same time, Jean Arrington told Virginia Taliaferro that Frank Arrington had left

one-fourth of his estate to his brother and one-fourth to his sister. There was testimony that Jean Arrington told her brother-in-law, Ted Arrington, and his wife, Alma, that she had left the will as "she and Frank made it." Jean said she could have changed it, but that she said, " 'I think it should be left the way we planned it to be,' and she told me then that she chose her brother's daughter, Rosemary, because she was fond of her, then, of course, her sister, and then Agnes and Ted as Frank mentioned in his will." According to the testimony, Jean did not want Donald McCall or Mrs. Wink to share in the estate, and they had purposely been left out. Further, Alma Arrington testified as follows:

"Q Did she refer to two wills rather than one will?

A I don't know, *she said that their wills would be left*, and she pointed out she could have changed them but she left them as they were. That's all I know about that." (Emphasis supplied).

Virginia Taliaferro, now a defendant, is said to have admitted shortly after Jean Arrington's death:

"She [Virginia Taliaferro] said that it has to be like Jean wanted it, that was the four ways, and like Mr. Dahl pointed out if there was some question in his mind, she said that it has to be the way Jean wanted it.

Q Four ways?

A Yes, as the paper suggested, the two for Frank's family and the two for Jean's family.

Q And Mrs. Taliaferro indicated that was the way it had to be?

A As I remember, that's right."

The defendants offered no evidence at trial.

The plaintiffs' petition was in two counts, the first count for construction of the will of Jean Arrington, and the second count sounding in contract and pleading in very general terms an agreement between Jean Arrington and Frank Arrington to dispose of their property at the death of the survivor—one-half to Agnes and Ted Arrington and one-half to Virginia Taliaferro and Rosemary Walton. The prayer of this count is for distribution in accordance with that theory and for general equitable relief. The individual defendants tendered a denial to Count I and as to Count II denied that there was any allegation of a breach of agreement and reiterated their position that the will of Jean Arrington discloses a partial intestacy. This pleading was coupled with a motion for summary judgment and for judgment on the pleadings which was denied by the trial court initially and upon its renewal at the close of the case.

The trial court entered a judgment decreeing distribution of the Jean Arrington Estate in four equal parts to Virginia Taliaferro, Rosemary Walton, Alma Arrington as Executor of Ted Arrington, and Agnes Arrington. Accompanying that judgment were findings of fact and conclusions of law. The trial judge found the execution of the wills and the probate of Jean Arrington's will, and the heirs of Jean and Frank Arrington as noted above. The court then found as a fact that Jean Arrington intended for her will to remain unchanged and had intentionally omitted Donald McCall and Sheralyn Wink from her will. Finding ambiguity in the language "joint tenancy," "future inheritance and gains in the estate," and "all remaining property," the court then found an intent on the part of Jean Arrington to divide the entire estate as argued by the plaintiffs. The court found this to be a "common purpose" and that the notes found in the safety deposit box were in her handwriting and evidenced her intention.

The conclusions of law recite the ambiguity of Jean Arrington's will and then declare that Jean Arrington never intended that any part of her estate pass by intestacy and that her clear intention on all the facts and circumstances was that her estate be divided one-half to her named beneficiaries and one-half to the beneficiaries named in her husband's will. The trial court further concluded that "the wills . . . were based upon a mutual agreement between them that the wills together repre-

sented their common purpose as to the final disposition of their property." The final declaration of the court was that Jean Arrington held the property as a constructive trustee for the persons named in both wills.

From these findings of fact and conclusions, it is impossible to discern whether the trial court was proceeding on the will construction theory of Count I of plaintiffs' petition or the contract theory of Count II. The parties have briefed the case alternatively (understandably in the light of the trial court's memorandum), co-mingling the theories of construction of the will and contract.

Before addressing the substantive issues, the procedural posture of the case must be considered. As noted, the named defendants had filed a motion for judgment on the pleadings and for summary judgment as to both counts of plaintiffs' petition. The alternative grounds stated were failure to state a claim and that no genuine issue of fact existed.

■ Defendants, by their first point, challenge the ruling of the trial court with respect to Count I asserting that the motion should have been sustained because, on the face of the will, there is no ambiguity. This claim is apparently addressed to the pleading issue of failure to state a claim. The second part of the assertion attacks the decree of the trial court, insofar as it may rest upon a construction of the Jean Arrington will, by pointing out that no language appears in the will that would permit the court to construe the will to provide for a gift to the legatees of Frank Arrington. Whatever might be said of the Jean Arrington will, vis-a-vis its ambiguity, the second argument has merit. There is simply no language which can support a claim by the plaintiffs under the will of Jean Arrington to a construction including them. The trial court should have sustained the defendants' motion with respect to Count I.

■ With respect to the second point raised by defendants, it is cast in terms of error by the trial court in overruling the motion for summary judgment. To the ex-

tent that the point attacks the sufficiency of the pleading after judgment, it is ineffectual. *Butler v. Circulus, Inc.*, 557 S.W.2d 469 (Mo.App.1977); *Carter v. Guffey*, 548 S.W.2d 233 (Mo.App.1977). The attack based upon the lack of a disputed fact is likewise ineffectual. Between these parties, there is a disputed fact question. That fact question is the existence or nonexistence of a contract. The defendants' point, in effect, concedes this by arguing that there was no evidence of such an agreement. When there is an issue of fact, a summary judgment is inappropriate. *Hurwitz v. Kohm*, 516 S.W.2d 33 (Mo.App.1974); *Adzick v. Chulick*, 512 S.W.2d 194 (Mo.App. 1974).

Thus, the issue to be resolved under the second count of plaintiffs' petition is the contract issue.

The issue with respect to the validity and existence of a contract is subtle and complex. In dealing with this issue, it will serve well to restate the substantive principles governing agreements or contracts relating to post-mortem disposition of property.

The rubric under which most of the cases in this area discuss the principles involved is that of the "joint, mutual, and irrevocable" will. The case which elucidates the law in this area upon bedrock principle is *Owens v. Savage*, 518 S.W.2d 192 (Mo.App.1974). 41 Mo.L.Rev. 127 (1976). That case aptly characterizes the language, "joint, mutual, and irrevocable will," as a miscegenation of the law of wills and contract. The parties have not cited *Owens v. Savage, supra*, and, in view of the controlling importance of that decision to this instant case, a rather full review will be undertaken.

In *Owens v. Savage*, a man and wife executed a joint and mutual will and a subsequent codicil. To the extent relevant to this review, the will provided for the husband and wife by reciprocal bequests upon the death of the spouse. Other specific bequests were made, and then a residuary bequest for a church was included. The wife died while that will stood unrevoked.

The husband thereafter executed a will with a different disposition. The litigation was a declaratory judgment suit by the legatees under the joint will against the legatees under the second will of the husband and the executor named in that will. There was a prayer for general equitable relief. So far as relevant to this discussion of the case, the trial court found that the joint will represented the agreement of the husband and wife and was valid and that it was "irrevocable" and ordered probate of the joint will and denial of probate of the subsequent will of the husband.

The defendants appealed, contending *inter alia* that the joint will was revoked and, therefore, the trial court order probating that will was erroneous. This court agreed that the will was revoked, but did not agree that the effect of the trial court judgment was in error, holding that the trial court's finding of a contract in the terms of the joint will was correct and that contract gave rise to a right of specific performance.

The rationale and reasoning of *Owens v. Savage, supra,* are of prime importance. First, the court found no impediment to the agreement and consideration being shown by the joint will with no extrinsic evidence of intent. Second, the court held that wills are ambulatory and may be revoked and that such revocation had occurred in the subsequent will of the husband. The court then went on to point out that instruments may be both wills and contracts; the orthodox view is that unilateral revocation of an instrument which is both a joint will and a contract does not avoid the contractual nature of the transaction, and that, therefore, the appropriate remedy is specific performance. The court further found that since the action was equitable and there was a general prayer for equitable relief, this court was authorized on appeal to direct the entry of the order the trial court should have entered. The authority cited in *Owens v. Savage* for this principle fully supports the statement.

■ Adverting now to the instant case, it is without question that on this appeal this court will review "the whole record" and may render or direct the entry of such judgment as the trial court should have rendered. *Anison v. Rice,* 282 S.W.2d 497, 502 (Mo.1955). Thus, no further discussion of the theories of "irrevocable wills" or "constructive trusts" both extensively briefed and argued by the parties, is necessary.

The resolution of the dispute between the parties in the instant case depends in its entirety on the question of whether, under what defendants concede is the "contract theory" of Count II in plaintiffs' petition, there is evidence sufficient to find a legally efficacious contract or agreement subject to specific performance.

■ For the purposes of clarity in the determination of the essential question, certain peripheral issues may be readily resolved. First, such an agreement is not subject to the claim that it is a testamentary disposition because, if found, it is a present agreement for performance in the future. *Green v. Whaley,* 271 Mo. 636, 197 S.W. 355 (1917). As a corollary to this proposition, there need not be an anticipatory breach by the execution of a subsequent will by one of the parties since the contract's time of performance does not occur until after the death of the last of the parties to the agreement. Thus, discussion of issues of "breach" or "revocation" is not necessary in the context of the instant case. Numbers of cases discuss and decide the issue of the existence or nonexistence of a contract where the contract is alleged to exist in separate unrevoked wills of a husband and wife or other related persons. In some cases, the contract proof is attempted by oral proof where the wills are merely reciprocal residuary bequests between husband and wife. *Burt v. McKibbin,* 188 S.W. 187 (Mo.1916). In other cases, the attempted proof relies on proof of reciprocal wills and other circumstances and evidence supporting a finding of a contract. *Plemmons v. Pemberton,* 346 Mo. 45, 139 S.W.2d 910 (Mo. banc 1940). Nor does the fact that some or all of the title to the property affected by the contract rests in tenancies by the entirety defeat such an agreement.

*Stewart v. Shelton,* 356 Mo. 258, 201 S.W.2d 395 (1947).

█ Consideration for such an agreement may be found in the materiality of promises of the parties with respect to gifts to preferred beneficiaries of each. *Wimp v. Collett,* 414 S.W.2d 65, 72 (Mo.1967); *Stewart v. Shelton, supra* at 400.

█ The burden of proof is, of course, upon the plaintiffs to prove the existence of the contract and the rules with respect to the quantum and type of evidence sufficient to sustain the burden of proof are well established. The following language from *Corpus Juris* has been cited so frequently by the Missouri courts as to have become a principle of law.

"It is not necessary to the intervention of equity to enforce an agreement for mutual wills that the agreement be established by direct evidence, and so, while proof of the agreement may expressly appear in the language of the wills, or may be supplied by competent witnesses who testify to admissions of the testators, or an express promise may be shown, evidence is also admissible of such facts and circumstances, and such relations of the parties, as to give rise to an implication that such an agreement was made, and such implication may have reinforcement from evidence of the conduct of the parties at the time of making the wills, and subsequently. Thus, for the purpose of showing that reciprocal wills were intended to be mutual, evidence may be admitted of facts tending to show that each of the parties acted, in making his will, with the knowledge of the other, that the two wills were drawn by the same person, at the same time, and at the joint request or direction of both parties, and, even though their dates differ slightly, that they were in fact executed in pursuance of a common purpose and understanding." 69 C.J. pp. 1303–1304.

Among the Missouri cases citing this language are *Plemmons v. Pemberton, supra; Glueck v. McMehen,* 318 S.W.2d 371 (Mo. App.1958); *Shackleford v. Edwards,* 278 S.W.2d 775 (Mo.1955); *Wimp v. Collett, supra.* Some of the cases have also referred to the same general subject matter in *Corpus Juris Secundum,* 97 C.J.S. Wills § 1367 (1957), which asserts the same principle.

As with many rules of law relating to issues of proof and the sufficiency of such proof, difficulty comes not in the statement of the principle but in the application of the principle to the facts. That difficulty was expressly recognized in *Plemmons v. Pemberton, supra* at 916, which stated as follows: ". . . the rule[s] relative to the sufficiency of the evidence to establish such agreement are well settled. The only difficulty is in applying the law to the facts in a given case. The facts in each case, of course, naturally differ. We find no two cases alike. The proper determination of this case depends upon the construction to be put upon the testimony of the witnesses relative to the circumstances under which the two wills in question were made."

█ Applying these principles to the instant case, it must be concluded that the evidence is sufficient to prove a contractual arrangement between the Arringtons to dispose of their property at the death of the survivor in accordance with the decree rendered by the trial court.

Persuasive on this issue are the implications that arise upon the face of the two documents in evidence, the will of Frank Arrington and that of Jean Arrington. The language of both wills speaks *in futuro.* In Article Second, although describing the property as joint tenancy and the gift of each spouse to the other, there is also a provision for "future inheritance or gains in the estate," which indicates an intent to consider the property as an estate at some future time. The gift to the collateral relatives in each of the wills is conditioned upon the death of *both* Frank Arrington and Jean Arrington. Each will refers to that gift being made at the death of *both,* which obviously refers to a future disposition and bespeaks an unfamiliarity with the ambulatory nature of wills. So also in the fourth article of both documents, the appointment of an executor is deferred until the death of

both Frank and Jean Arrington. This deferment of appointment evidences that the parties were considering these instruments as operable only at the death of both which could not be the case if they were considered purely as testamentary dispositions.

The wills are mirror images each of the other with the exceptions of the collateral heirs named as beneficiaries. Together, they make a coherent and complete disposition of the parties' property, including future gains and inheritances. Separately, they do not exhibit any such comprehensive and sensible plan. They were executed within a few days of each other and have a common witness. The circumstances of the parties are also persuasive of an agreement to provide by contract for the disposition for which the plaintiffs argue. In that respect, the facts of this case are similar to the facts in *Wimp v. Collett, supra*. Frank and Jean Arrington each had similar collateral relatives who, absent the existence of children, would ordinarily be the objects of their bounty. In the language of *Wimp v. Collett, supra* at 71, it is "reasonable to infer that . . . would wish to provide for his collateral heirs and . . . [she] would tend to favor her family." As in *Wimp v. Collett*, there were separate reciprocal wills. In *Wimp v. Collett*, the court also relied upon this same logic to find an agreement, citing with approval *Shackleford v. Edwards, supra*, where similar circumstances existed. As noted in *Wimp v. Collett*, it would be illogical to suggest that such a comprehensive scheme came into being ipso facto. The language utilized in *Shackleford v. Edwards, supra* at 780, is equally applicable to the facts of this case. "Now this was the kind of an arrangement which would be expected under these facts—one which unerringly bespeaks the prior existence of an agreement that the disposition then agreed on would be the final ultimate disposition of their separate properties, and one which would be most unlikely in the absence of such a definite agreement."

In the instant case, the subsequent actions of Mrs. Arrington and her statements shown in evidence are consistent with and supportive of a finding of such an agreement. The statements of Mrs. Arrington referring to the wills in a plural sense and to a division of the property into fourths and the references to four heirs are all supportive of an inference and implication of a contractual agreement by Jean and Frank Arrington. The language attributed to Jean Arrington that she had left a will "as she and Frank made it," and "I think it should be left the way we *planned* it to be," is indicative of an agreement. So, too, the handwritten note of Jean Arrington, admitted in evidence, referring to a disposition in accord with a theory of contract or agreement into the one-fourth share disposition argued by the plaintiffs is indicative of an intent to provide contractually for such a disposition. All of this evidence came in plaintiffs' side of the case, and defendants offered no countervailing evidence. Thus, the facts in this case are comparable to the facts in *Wimp v. Collett, supra*; and the rationale of these cases is fully applicable.

The evidence in this case, fully considered in the context of the situation of these parties, supports a finding of an intent to factually agree to dispose of all their property as the reciprocal wills of the parties indicate and as the trial court held.

The trial court's application of the erroneous theory of constructive trust in making its decree is unimportant in the disposition to be made of the appeal here. This court should enter the order the trial court should have made and, where that order should be for specific performance, it will be made if the facts sufficiently appear. *Owens v. Savage, supra.*

Based upon the unique facts of this case, the dispositional order should be to direct the executor to administer upon the estate of Jean Arrington and make distribution of one-fourth of the distributive estate to Virginia Taliaferro and one-fourth of the distributive estate to Rosemary Walton. The court should further enter an order of specific performance directing the executor to distribute the remaining one-half of the distributive estate one-fourth to Agnes Ar-

rington and one-fourth to Alma Arrington, Executrix of Ted Arrington.

The cause is reversed and remanded to the trial court with directions to enter an order in accordance with the foregoing.

All concur.