US BANK NATIONAL ASSOCIATION
as Trustee, c/o Homecomings
Financial, LLC, Appellant,

v.

Katherine COX, et al., Respondents.

No. WD 71945.

Missouri Court of Appeals,
Western District.

May 31, 2011.

M. Catherine Hartnett and Sara N. Faubion, Kansas City, MO, for appellant.

John H. Edmiston, Warrensburg, MO, for respondents.

Before Division Two: JAMES M. SMART, JR., Presiding Judge, MARK D. PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

This case arises out of the refinance of a residential loan by Homecomings Financial Network, Inc. ("Homecomings"). US Bank National Association, as Trustee, c/o Homecomings Financial, LLC ("US Bank") became the holder of the loan documents. After the loan went into default, U.S. Bank learned that the deed of trust, which was intended to secure the loan, identified property that was not owned by the purported borrowers, Katherine Cox ("Katherine")[1] and her husband Dennis Cox ("Dennis" or collectively the "Coxes"). US Bank sued the Coxes seeking to reform the deed of trust or, in the alternative, for unjust enrichment.

Following a bench trial, the trial court entered its judgment ("Judgment") in favor of the Coxes on U.S. Bank's claims for reformation and unjust enrichment and on the Coxes' claim that the deed of trust should be declared void and of no force or effect. US Bank filed this timely appeal.

We affirm.

## Facts and Procedural History[2]

On September 23, 1994, the Coxes became the owners, as tenants by the entirety, of residential real property located at 717 N.W. 1501 Road in Holden, Johnson County, Missouri (the "Cox Property"). On May 29, 1998, the Coxes acquired an adjacent tract of real property (the "Adjacent Tract").

On September 20, 2004, the Coxes sold the Adjacent Tract to Robert E. Talley and Christine Y. Talley.

In late May 2005, the Coxes borrowed $246,000.00 from Homecomings and executed a deed of trust encumbering the Cox Property (the "First Homecomings Loan").

A few months later, Katherine sought to refinance the First Homecomings Loan, again with Homecomings. At trial, Dennis testified that he was aware that Katherine was applying on her own to refinance the First Homecomings Loan, but that he did not participate in the application because his credit was bad. No evidence that Dennis participated with Katherine to jointly apply for credit to refinance the First Homecomings Loan was introduced at trial.[3] Homecomings agreed to refinance the First Homecomings Loan (the "Second Homecomings Loan"). A closing was scheduled for December 27, 2005.

On December 27, 2005, Dennis drove Katherine to the closing. Katherine and Dennis testified that Katherine physically attended the closing, and that Dennis waited outside most of the time. Katherine testified Dennis was never in the room while she executed closing documents. At closing, Katherine signed a $261,000 promissory note ("Promissory Note"). The Promissory Note was not signed by Dennis, and did not include a signature line for Dennis. Katherine also signed a deed of trust ("Deed of Trust") above a signature line where her name had been "typed." A signature purporting to be Dennis's appears on the Deed of Trust above a signature line where Dennis's name was handwritten, not typed. The signatures on the Deed of Trust were notarized. However,

---

1. We refer to Katherine Cox and Dennis Cox by their first names to avoid confusion. No disrespect is intended.

2. We view the evidence in the light most favorable to the judgment. *Cullison v. Thiessen,* 51 S.W.3d 508, 511 (Mo.App. W.D.2001)

3. For example, neither the loan application nor other documents which would have been submitted by a prospective borrower in the ordinary course in connection with a request for an extension of credit were offered into evidence by U.S. Bank.

the notary attests that "On this *28th* day of December, 2005, before me personally appeared KATHERINE A. COX AND DENNIS R. COX, WIFE AND HUSBAND to me known to be the person(s) described in and who executed the foregoing instrument. . . ." Thus, the notary public appears to have notarized the Deed of Trust a day *after* the physical loan closing. Katherine and Dennis each testified that the signature appearing above the signature line for "Dennis Cox" on the Deed of Trust was not Dennis's signature. A handwriting expert testified that the signature on the Deed of Trust was not Dennis's and was, in her opinion, a forgery.

Other routine closing documents were executed by Katherine at closing. Dennis acknowledged at trial that certain routine closing documents do bear his authentic signature including the HUD–1 settlement statement, an owner's affidavit, a name affidavit, several notices of right to cancel, and an authorization for release of his tax return.

The proceeds from the Second Homecomings Loan were used by Homecomings to pay off the First Homecomings Loan ($251,266.76) and to pay settlement charges ($4,664.24). The balance of the Second Homecomings Loan was paid out to the Coxes according to the HUD–1 settlement statement.

At some point following the closing of the Second Homecomings Loan, U.S. Bank become the holder of the Promissory Note and Deed of Trust.[4]

In 2007, the Promissory Note (which was signed by Katherine) went into default. US Bank learned that the Deed of Trust securing the Promissory Note mistakenly identified the Adjacent Tract and not the Cox Property. US Bank also learned that Dennis denied the authenticity of his signature on the Deed of Trust.

US Bank filed suit against the Coxes. On April 14, 2009, U.S. Bank filed a First Amended Petition ("Amended Petition"). The Amended Petition sought to reform the Deed of Trust to substitute the legal description for the Cox Property in place of the legal description for the Adjacent Tract. The Amended Petition also sought a judgment against the Coxes jointly and severally for unjust enrichment in the amount due on the Promissory Note. U.S. Bank did not assert a separate claim against Katherine for breach of contract on the Promissory Note. The Coxes filed an answer and counterclaim seeking a declaratory judgment that the Deed of Trust was void and a legal nullity.

A bench trial was conducted on May 14, 2009. At trial, a representative of GMAC, the company servicing the Second Homecomings Loan for U.S. Bank, testified for U.S. Bank. This representative did not attend the Second Homecoming Loan closing, did not prepare the closing documents, and offered no testimony about the closing other than to verify that certain documents generated out of the closing had been maintained as business records. US Bank did not call as a witness the person or persons who handled the Second Homecomings Loan closing, or the notary public who notarized the Deed of Trust.

---

4. The record on appeal does not include documentation reflecting assignment or other transfer of the Promissory Note and Deed of Trust by Homecomings to U.S. Bank. There is an assertion in a post-trial brief filed by U.S. Bank that U.S. Bank "accepted the [Second Homecomings Loan] via endorsement of the [Promissory] Note." Though documentation reflecting U.S. Bank's acquisition of an interest in the Promissory Note was not introduced, U.S. Bank's status as the holder of the Promissory Note was not contested by the Coxes at trial.

■ At the conclusion of the trial, U.S. Bank made an oral motion to amend its petition to conform to the evidence to permit the assertion of an additional claim of equitable subrogation. US Bank argued that since the Second Homecomings Loan paid off the First Homecomings Loan, U.S. Bank, as the current holder of the Second Homecomings Loan documents, "stood in the shoes" of Homecomings in its status as the lender of the First Homecomings Loan.[5]

On December 3, 2009, the trial court entered its Judgment denying U.S. Bank's requests to reform the Deed of Trust and for a judgment against the Coxes for unjust enrichment. The trial court found in favor of the Coxes on their counterclaim, and declared the Deed of Trust, and any lien purportedly created by the Deed of Trust, void and of no force and effect. The Judgment denied U.S. Bank's oral motion to amend its petition to assert an additional claim for equitable subrogation.

US Bank filed this timely appeal.

### Mootness

Before we explore the merits of the issues raised by U.S. Bank on appeal, we are required to dispose of a Motion to Dismiss this appeal filed by the Coxes, and taken with the case.

The Coxes have advised this Court that, following entry of the Judgment, U.S. Bank assigned the Promissory Note and Deed of Trust to its title insurance compa-

ny in connection with the resolution of a claim made by U.S. Bank on a lender's policy of title insurance issued in connection with the Second Homecomings Loan. According to the Coxes, the assignment renders this case moot, because U.S. Bank no longer has an interest in the Deed of Trust it is seeking to reform. The Coxes have also advised this Court that a second lawsuit has been filed against them by the title company who took the assignment of the Promissory Note and Deed of Trust.

■ US Bank has confirmed that it did, in fact, assign its interest in the Promissory Note and Deed of Trust to a title company with whom it resolved a title insurance policy claim. US Bank has provided this Court with a copy of the assignment document which arguably conveys as well any interest U.S. Bank may have in continuing rights of recovery from the Coxes over and above the amount U.S. Bank was paid by the title company. US Bank correctly points out, however, that Rule 52.13(c) provides with respect to a pending action that:

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court *upon motion* directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of *the motion* shall be made as provided in subsection (a) of this Rule.

---

5. Homecomings was the original lender on the First Homecomings Loan and the Second Homecomings Loan. U.S. Bank, as the successor in interest to Homecomings, acquired no greater rights than those of the Homecomings in the Promissory Note and Deed of Trust. *Freeman v. Leader Nat'l Ins. Co.*, 58 S.W.3d 590, 597 (Mo.App. E.D.2001) ("A party making a claim through a derivative right acquires no greater rights in law or in equity than the party for whom it was substituted.")

US Bank did not explain to the trial court how Homecomings could have claimed equitable subrogation when Homecomings used the proceeds of the Second Homecomings Loan to repay itself. We need not further detain ourselves, however, with the incongruity of U.S. Bank's argument as it has not appealed the trial court's denial of its oral motion to amend the pleadings to conform to the evidence.

(Emphasis added.) The "motion" referred to in Rule 52.13(c) is described in Rule 52.13(a)(1). That Rule provides, in pertinent part:

> A motion for substitution may be made by any party or by the successor.... Such motion, together with notice of hearing shall be served upon the parties as provided in Rule 43.01, and upon persons not parties in the manner provided for the service of summons.

These Rules combine to instruct that a transfer of interest *after*[6] an action has been commenced does not summarily divest the original parties of the right to continue pending litigation. *See Metmor Fin., Inc. v. Leggett,* 787 S.W.2d 733, 737 (Mo.App. E.D.1989). The remedy for a person who believes he or she has or will be affected by such a transfer is not, therefore, to seek dismissal of the action, but rather to seek substitution and/or joinder of the claimed successor in interest—relief which a court may (or may not) grant in its discretion.

Neither U.S. Bank nor the Coxes have filed a Rule 52.13(a) motion seeking substitution and/or joinder of the title company. Nor has the title company filed such a motion.

The Coxes' motion to dismiss this appeal as moot is denied. The effect of this appeal on the rights of the Coxes and/or the title company *vis a vis* a separate lawsuit the Coxes represent the title company has filed in Johnson County, Missouri is not a matter properly before this Court for discussion, consideration, or determination.

We turn, therefore, to the issues raised by U.S. Bank on appeal.

## Issues on Appeal

US Bank raises four points on appeal. In Point One, U.S. Bank alleges that the trial court misstated the law regarding the elements required to prove a claim of unjust enrichment by requiring proof of "wrongful conduct" on the part of the Coxes. In Point Two, U.S. Bank alleges that the Judgment was against the weight of the evidence because U.S. Bank proved each element of an unjust enrichment claim. In Point Three, U.S. Bank alleges that the Judgment denying U.S. Bank's request to reform the Deed of Trust is against the weight of the evidence. In Point Four, U.S. Bank contends that the trial court erred in granting the Coxes' request to declare the Deed of Trust invalid, and that the Deed of Trust should remain of record on the chance that Dennis will predecease Katherine.

## Standard of Review

In a court tried case, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "The *Murphy v. Carron* standard ... does not stand for the proposition that if 'substantial evidence' and the 'weight of the evidence' could support an alternative judgment the judgment must be reversed...." *Dixon v. Dixon,* 62 S.W.3d 589, 594 (Mo.App. W.D.2001). Instead, "only when the judgment rendered is not supported by 'substantial evidence' or is

---

6. In contrast, Rule 52.01 requires dismissal of an action instituted by one who has assigned his or her interest in a claim *prior* to the commencement of the action. *See* I Mo. Civil Procedure section 52.13 (MoBar 3rd ed. 2007) ("Rule 52.13(c) speaks to the transfer or assignment of an interest that concerns the subject matter of a pending action. A transfer or assignment of such an interest before suit involves application of Rule 52.01 regarding real parties in interest.")

'against the weight of the evidence' must the judgment be reversed." *Id.* We view the evidence and all reasonable inferences in the light most favorable to the judgment. *Cullison,* 51 S.W.3d at 511.

## Points One and Two

Points One and Two address U.S. Bank's claim of unjust enrichment. US Bank contends that the trial court erroneously imposed a burden on it to prove that the Coxes engaged in "wrongful conduct," though wrongful conduct is not an element of an unjust enrichment claim. US Bank also contends that it established the requisite elements of an unjust enrichment claim.

■ The essential elements of an unjust enrichment claim are: a benefit conferred by a plaintiff on a defendant; appreciation by the defendant of the benefit; and the acceptance and retention of the benefit under circumstances that would render that retention inequitable. *Hertz Corp. v. RAKS Hospitality, Inc.,* 196 S.W.3d 536, 543 (Mo.App. E.D.2006); *Graves v. Berkowitz,* 15 S.W.3d 59, 61 (Mo.App. W.D. 2000).

The trial court correctly articulated these elements in the Judgment. The trial court then concluded that the Coxes' mere receipt of benefits was not enough to justify a showing that it would be unjust for them to retain the benefit of the Second Homecomings Loan. The trial court found that "[a]t no time did Homecomings [US Bank's predecessor in interest] look toward Dennis Cox for repayment. At no time did Dennis Cox agree to repay such monies loaned to Homecomings. There can be no unjust enrichment [if] the parties receive that which they intended to obtain." *In this context,* the trial court observed that it found that no "wrongful conduct on the part of the [Coxes] contributed to [US Bank's] disadvantage." In so

observing, the trial court was not imposing the burden on U.S. Bank to prove wrongful conduct as a fourth element of a claim for unjust enrichment. Rather, the trial court was simply noting that the absence of any wrongful conduct on the part of the Coxes made it impossible for U.S. Bank to overcome the fact that Dennis had never agreed to incur an obligation to Homecomings and that Homecomings had never intended to look to Dennis to repay the Second Homecomings Loan.

Point One is denied.

US Bank next argues that the trial court's Judgment rejecting the unjust enrichment claim is against the weight of the evidence because U.S. Bank proved all three elements of its claim. We disagree. The trial court did find that "[b]oth Dennis and Katherine Cox received benefits from the [Second Homecomings Loan]." The trial court thus found that the first element of an unjust enrichment claim—a benefit conferred—had been established. The trial court's finding could also be interpreted to mean that the trial court believed the Coxes appreciated the fact that a benefit had been conferred—the second element of an unjust enrichment claim.

The trial court found, however, that U.S. Bank did not establish the third element of an unjust enrichment claim—the appreciation and retention of a benefit under circumstances where it would be inequitable for the Coxes to retain the benefit. The trial court's conclusion is not against the weight of the evidence.

■ "The third element [of an unjust enrichment claim], unjust retention of the benefit, is considered the most significant and the most difficult of the elements. Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Adams v. One Park Place Investors, LLC,*

315 S.W.3d 742, 749 (Mo.App. W.D.2010) (citation omitted).

As previously observed, U.S. Bank's predecessor, Homecomings, extended $261,000 in credit solely to Katherine. Homecomings had no intention of looking to Dennis *personally* to recover in the event of a default on the Promissory Note. Moreover, Dennis never agreed to bear personal responsibility on the Promissory Note. Though Homecomings may have intended to secure Katherine's obligation to repay the Promissory Note with a Deed of Trust on the Cox Property, Dennis's signature on the Deed of Trust would not have exposed him to personal liability on the Promissory Note. *See, e.g., R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365, 368 (Mo.1974) (holding that a deed of trust given to secure payment of a debt is a lien and nothing more); *State Ins. Co. v. Irwin*, 67 Mo.App. 90 (1896) (holding that one who acquired property subject to a deed of trust does not assume personal liability to pay underlying debt).

The trial court correctly held that there can be no unjust enrichment if the parties receive what they intended to obtain. *American Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 293 (Mo.App. S.D.2003). This is because "[a]n action for unjust enrichment is based on a theory of quasi contract or contract implied in law...." *Id.* at 291. If we were to afford U.S. Bank the relief of a joint and several judgment against the Coxes for the unpaid balance of the Promissory Note, we would be affording U.S. Bank relief beyond that which Homecomings, its predecessor, intended to obtain. US Bank is not entitled, under the guise of an unjust enrichment claim, to rewrite a consensual contract in an effort to impose personal liability on Dennis.[7]

The facts in this case are similar to those in *Graves*, 15 S.W.3d 59. In *Graves*, the owners of a building leased space to a tenant who intended to construct a restaurant. *Id.* at 60. The tenant contracted with Graves to build out the space. *Id.* When the tenant failed to pay Graves, Graves sued the owner of the building claiming unjust enrichment. *Id.* The trial court denied the claim, and we affirmed. *Id.* at 64. We held that "there was no implicit or express understanding that the [building owner] would guarantee payment [to Graves]." *Id.* As the building owner never contracted for the improvements, and as Graves never expected the building owner to pay for the construction work it agreed to undertake, it was not unjust for the building owner to retain the benefit of the construction work without paying for same. *Id.*

The case before us is indistinguishable. US Bank received exactly what its predecessor bargained for—a right to pursue collection of the Promissory Note from only Katherine. The issue of the enforceability of the Deed of Trust—the collateral security for the Promissory Note—is an unrelated inquiry. *See R.L. Sweet Lumber Co.*, 513 S.W.2d at 368 ("[A deed of

---

**7.** We remain perplexed that U.S. Bank did not pursue a claim against Katherine for breach of contract on the Promissory Note, an exercise which, if undertaken, would have alleviated any need to pursue Katherine for unjust enrichment. We question whether U.S. Bank could have effectively asserted a claim against Katherine for unjust enrichment (an action based on a theory of quasi contract or contract implied in law) in light of an available contract remedy. In any case, U.S. Bank has not asserted that the trial court committed error by failing to enter a judgment against only Katherine on its unjust enrichment claim. US Bank's interest, it seems, is singularly focused on locating a remedy which will afford it the right to pursue collection, either *in personam* or *in rem*, against the Coxes jointly.

trust] is neither jus in re nor jus ad rem. It is merely the right to have the debt, if not otherwise paid, satisfied out of the land. The debt is the essence of the mortgage, the lien a mere incident that follows it as a shadow.") The invalidity of the Deed of Trust (which we discuss, *infra*) does not require us to conclude that it would be unjust to leave Dennis unexposed on the Promissory Note—precisely the position he and Homecomings always intended.

As an aside, we observe that U.S. Bank's argument that it established all these elements of a claim of unjust enrichment is specious. Even if it made a submissible case, U.S. Bank failed to carry its burden of persuasion. The trial court did not commit error.

Point Two is denied.

### Point Three

In its third point on appeal, U.S. Bank contends that the trial court's rejection of its request to reform the Deed of Trust to substitute the legal description of the Cox Property for the Adjacent Property was against the weight of the evidence. We disagree.

■■■ The burden of proof in a reformation case is upon the party seeking to reform an instrument. *Ethridge v. Perryman*, 363 S.W.2d 696, 698 (Mo. banc 1963). To satisfy the burden, a party seeking reformation must establish by clear and convincing evidence: (1) a preexisting agreement between the parties; (2) the existence of a mistake and; (3) the mutuality of mistake. *Id.* " 'For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition [such that] the fact finder's mind is left with an abiding conviction that the evidence is

true.' " *In the Matter of O'Brien*, 600 S.W.2d 695, 697 (Mo.App. W.D.1980) (citation omitted).

US Bank argues that Katherine signed the Deed of Trust, that Katherine and Homecomings intended the Deed of Trust to encumber the Cox Property and not the Adjacent Tract, and that the Deed of Trust erroneously described the Adjacent Tract. In fact, the trial court made findings of fact to this effect. These findings of fact arguably reflect that all three elements of a claim for reformation *as between Katherine and U.S. Bank* were established.

■■■ That is not enough, however, to entitle U.S. Bank to a judgment reforming the Deed of Trust. "A deed of trust is a conveyance from the landowner (the 'grantor' or 'mortgagor') to a trustee, for the limited purpose of securing an obligation owing to the beneficiary of the trust (the 'mortgagee')." 18 TIMOTHY TRYNIECKI, MISSOURI PRACTICE: MISSOURI REAL ESTATE LAW—TRANSACTIONS AND DISPUTES section 16:1, at 297 (3rd ed.2006). "All deeds or other conveyances of land, or of an estate or interest therein, must be subscribed by the grantor and acknowledged." *Jamieson v. Jamieson*, 912 S.W.2d 602, 605 (Mo.App. E.D.1995). This principle is codified at section 442.130 [8] which provides that "[a]ll deeds or other conveyances of lands, or of any estate or interest therein, shall be subscribed by the party granting same, or by his lawful agent, and shall be acknowledged or proved and certified in the manner herein prescribed."

■■■ Under Missouri law, "[a] deed by only one of two tenants by the entirety conveys nothing." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007). "The distinctive characteristic of an

---

8. All statutory references are to RSMo 2000, as supplemented, to the date of this Opinion.

estate by the entirety is that it is deemed to be owned by a single entity, the marital community." *U.S. Fidelity and Guar. Co. v. Hiles,* 670 S.W.2d 134, 137 (Mo.App. E.D.1984). In other words, "each spouse is seized of the whole or entirety and not of a share, moiety or divisible part." *Stewart v. Shelton,* 356 Mo. 258, 201 S.W.2d 395, 398 (1947).

> For this reason, "neither spouse has any right, title or interest which may be conveyed, encumbered or devised by his or her sole act...." *Id.* (italics in original); *see also* WILLARD L. ECKHARDT, POSSESSORY ESTATES, FUTURE INTERESTS AND CONVEYANCES IN MISSOURI Section 40 (West 1986) (neither spouse can convey any interest held by the entirety unless the other spouse joins in the conveyance); 4A RICHARD R. POWELL, THE LAW OF REAL PROPERTY ¶ 622[4] (1st ed. 1949 & Supp.1992) (both spouses acting in concert can convey their tenancy by the entirety, but neither acting alone may do so).

*In re Estate of Blair v. Blair,* 317 S.W.3d 84, 89 (Mo.App. S.D.2010).

■ Missouri law with respect to conveyances generally, and with respect to conveyances of tenancy by the entirety property specifically, collectively require us to conclude that U.S. Bank was not entitled to a judgment reforming the Deed of Trust as to impose a lien on the Cox Property unless it could demonstrate it had Dennis's consent to do so. US Bank did not meet this burden.

The trial court made several findings pertinent to this conclusion. The trial court found that Dennis "did not execute or initial the [Deed of Trust] and his signatures and initials thereon are forgeries." The trial court found that Dennis never "authorized anyone to sign his name on the [Deed of Trust]." US Bank has not challenged these findings on appeal. Thus, the predicate for a lawful conveyance described in section 442.130 has not been satisfied, as the Deed of Trust was not "subscribed by [Dennis] or by his lawful agent."

US Bank offers no authority for the proposition that it could satisfy the required predicate of Dennis's signature on the Deed of Trust with other evidence that Dennis generally intended to authorize the Deed of Trust as an encumbrance on the Cox Property. We are aware of no such authority. Even if satisfaction of the statutory predicate of Dennis's signature could be established by other evidence of "consent," two significant impediments face U.S. Bank.

First, U.S. Bank did not seek to reform the Deed of Trust to treat it as if it had been signed by Dennis. US Bank sought only to substitute the legal description in the Deed of Trust. Substituting the legal description is of no import if the Deed of Trust is an otherwise legally invalid conveyance as it lacks the signature of an essential grantor.

Second, even if we could interpret U.S. Bank's reformation action as having sought to reform the Deed of Trust to treat it as executed by Dennis, U.S. Bank failed to clearly and convincingly establish the elements of reformation. The trial court found that although the Deed of Trust mistakenly identified the wrong tract of property, Dennis "did not contribute to the mistake relating to the legal description." The trial court found that Dennis was "[a]t no time ... involve[d] in negotiations relating to the origination of the [Promissory] Note or Deed of Trust." The trial court further found that "[a]t no time was there a pre-existing agreement between [Dennis] and [Homecomings] to encumber the Cox Property with the [Deed of Trust]." These factual findings

are not against the weight of the evidence, particularly in light of the clear, cogent, and convincing standard applicable to a reformation action.

Based on these findings, the trial court concluded, as a matter of law, that U.S. Bank "introduced no evidence indicating [Dennis] had any pre-existing agreement with [Homecomings] relating to the execution of a Deed of Trust or underlying [Promissory Note]." The trial court also concluded that "[w]hile the Court finds that a mistake took place insofar as the legal description is concerned, this mistake is not mutual insofar as it relates to [Dennis]." The trial court thus concluded that U.S. Bank failed to establish all of the elements necessary to entitle it to reform the Deed of Trust as to Dennis. The trial court correctly applied the law, and its Judgment rejecting the claim of reformation of the Deed of Trust should be affirmed.

Point Three is denied.[9]

### Point Four

In its fourth point on appeal, U.S. Bank argues that the trial court erred in declaring the Deed of Trust void and of no force or effect. US Bank argues that although the Deed of Trust is not enforceable against the Cox Property so long as Dennis remains a tenant by the entirety, should Dennis die, his interest would pass to Katherine and the Deed of Trust would become valid and could be foreclosed. US Bank thus argues the Deed of Trust should be permitted to remain of record. We disagree.

US Bank necessarily concedes in this case that the Deed of Trust in its present form is not valid—it encumbers the Adjacent Tract which is no longer owned by the Coxes. Thus, U.S. Bank's argument in its fourth point on appeal necessarily presumes that it is entitled to reform the Deed of Trust as to Katherine alone in order to substitute the legal description of the Cox Property for the Adjacent Tract.

We have already determined that U.S. Bank is not entitled to the relief of reformation solely against Katherine. Thus, we need not detain ourselves with a hypothetical discussion about whether the Deed of Trust, if reformed as to Katherine, could remain of record on the hope that Dennis will predecease Katherine. We seriously question, however, whether the facially invalid, unlawful, and unenforceable Deed of Trust could be permitted to remain of record as a cloud on title on the happenstance that a future event *could* convert the Deed of Trust into a lawful conveyance, particularly in light of our Supreme Court's guidance in *Ethridge v. TierOne Bank* that a conveyance by one of two tenants by the entirety conveys nothing. 226 S.W.3d at 132.

Point Four is denied.

9. As a result, the Deed of Trust should be released by a deed of release signed by U.S. Bank, or by recordation of this Opinion. In the event the latter course is required, we note the following particulars required by the Recorder of Deeds to properly record: The Deed of Trust we have declared void and of no force or effect is dated December 27, 2005. It was recorded on January 5, 2006 in the Johnson County, Missouri Recorder of Deeds Office at Book 2864, pages 84–104. It identifies Katherine A. Cox and Dennis R. Cox as "Grantor" and Homecomings Financial Network, Inc. as "Grantee." The legal description against which the Deed of Trust was recorded is: "All that part of the West half on the South 100 acres on the Southwest Quarter, Section Sixteen (16), Township Forty–Seven (47), Range Twenty–Eight (28), lying North of the Tract sold to Dennis R. and Katherine A. Cox at Book 1253, Page 265 of the Deed Records, all in Johnson County, Missouri."

## Conclusion

The judgment of the trial court is affirmed.

All concur.