**HOUSE RESCUE CORPORATION,**
Respondent,

v.

**Karl THOMAS and Ambassador**
**Properties, L.L.C.,**
**Appellants.**

**No. WD 71087.**

Missouri Court of Appeals,
Western District.

Oct. 5, 2010.

Application for Transfer to Supreme
Court Denied Dec. 7, 2010.

Application for Transfer Denied
Jan. 25, 2011.

Cynthia C. Campbell, Esq., Kansas City, MO, for appellant.

Patrik G. Reavey, Esq., James Thomas Wicks, Esq., and Emma L. Dill, Esq., Kansas City, MO, for respondent.

Before Division One: LISA WHITE HARDWICK, Chief Judge, Presiding, JAMES M. SMART, JR. and ALOK AHUJA, Judges.

LISA WHITE HARDWICK, Chief Judge.

Karl Thomas and Ambassador Properties, L.L.C. appeal a judgment denying their claim for possession of real property and damages as intervenors in an action filed under the Missouri Abandoned Housing Act. For reasons explained herein, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

House Rescue Corporation ("HRC") is a not-for-profit corporation whose mission is to acquire and rehabilitate abandoned housing in the urban core of Kansas City. In July 2004, HRC was interested in acquiring a vacant, neglected house located at 3120 Cypress Avenue ("the property") and sent a letter to Charles and Louise Laspy, the owners of record. After receiving no response, HRC hired a private investigator who reported Louise Laspy was deceased. The investigator was unable to locate Charles Laspy or any potential heirs.

On August 23, 2004, HRC filed a notice of *lis pendens* against the property pursuant to Section 447.628, thereby indicating its intention to seek possession and title under the Missouri Abandoned Housing Act ("Act"), Sections 447.620–640.[1] One

1. All statutory references are to Revised Statutes of Missouri 2000, as updated through the

week later, HRC filed a Petition for Temporary Possession for Rehabilitation of the property against Charles Laspy, as the sole defendant. The Jackson County Circuit Court granted HRC's motion to obtain service on Charles Laspy by publication.

During 2004, another not-for-profit corporation, Urban Renewal of Kansas City, Inc. ("Urban Renewal"), also became interested in acquiring the property. Urban Renewal hired Latt Copley to locate the owners of 3120 Cypress Avenue and obtain a deed to the property. In November 2004, Copley prepared a quitclaim deed and approached Curtis Laspy, whom Copley believed was an heir to the property. When Copley asked whether he was interested in selling the property, Curtis Laspy said he wanted to discuss the matter with his sister. Copley left the unsigned quitclaim deed in Curtis Laspy's possession.

On February 18, 2005, Karl Thomas, a self-described real estate investor, gave Brent Barber a check for $22,000. Thomas intended the check to serve as payment for the purchase of two properties, one of which was 3120 Cypress Avenue at a purchase price of $12,000. At Barber's instruction, Thomas made the check payable to "Washington Mutual." Thomas did not conduct a title search on 3120 Cypress Avenue before giving the check to Barber. He acknowledges that he should have done so and that he had been "duped" by Barber on prior transactions.

Approximately one week later, Thomas received a quitclaim deed to 3120 Cypress Avenue.[2] The deed had been executed on

2009 Cumulative Supplement.

2. The quitclaim deed states in relevant part: This indenture, Made on the 18th day of November 2004 A.D., By and between Theresa Nelson and Curtis Laspy, grantor(s) of County of Jackson, State of Missouri parties of the first party, and AMBASSADOR PROPERTIES LLC. [handwritten], grantee(s) of the County of Jackson, State of Missouri, party of the second part . . .

Now comes Teresa Nelson and Curtis Laspy, being of lawful age and sound mind, and having been duly sworn, states the following:

1. That the undersigned is the son and daughter of Theresa Nelson and Curtis Laspy, and by reason thereof has personal knowledge of the following information.

2. That Charles and Louise Laspy died a residents of Jackson County, Missouri, on June 7, 2001 and October 3, 2000, respectfully; that said Charles and Louise Laspy were survived by their son and daughter.

3. That Charles and Louise Laspy were survived by no other descendants who have an interest in the estate, natural or adopted.

4. That said Charles and Louise Laspy left no Last will and Testament, there was no administration held on their estate in Missouri or elsewhere, and that there are no unpaid claims or unpaid federal or state estate taxes due on the estate of Charles and Louise Laspy.

5. That by reason of the above, the owners of the late Charles and Louise Laspy, interest in the above referenced Real Property are as follows:

Theresa Nelson  50%
Curtis Laspy   50%
. . . .

WITNESSETH, that the said parties of the first part, in consideration of the sum of One Dollar and 00/100 Dollars To be paid by the party of the second part (the receipt of which is hereby acknowledged). Does by these presents, REMISE, RELEASE, and FOREVER QUIT CLAIM unto the said party of the Second part, the following described lots, tracts of parcels of land, lying, being and situate in the County Of Jackson and State of Missouri, to wit LOT 53 BLK 2

KNOCHE PARK, a subdivision of Kansas City, Jackson County, Missouri according to the recorded plat thereof.

TO HAVE AND TO HOLD THE SAME, with all rights, immunities, privileges, and appurtenances thereto belonging, unto the said party of the second part and unto their heirs and assigns forever; so that neither

November 18, 2004, and was the same deed Copley had prepared and left with Curtis Laspy months earlier. The quitclaim deed appeared to be signed by Theresa Nelson and Curtis Laspy, but only Theresa Nelson's signature was notarized. Thomas understood the deed to indicate that Theresa Nelson and Curtis Laspy were the sole heirs of Charles and Louise Laspy, and, thus, they had authority to convey the property. Thomas had never met Curtis Laspy or Theresa Nelson.

Thomas filled in the blank grantee line of the quitclaim deed by handwriting the name and address of his business, Ambassador Properties, L.L.C. ("Ambassador"), a limited liability company that did not file Articles of Organization with the Missouri Secretary of State until February 24, 2005, approximately three months *after* the quitclaim deed was executed. Thomas also made a handwritten notation on the bottom of the first page of the deed, which said "LEGAL DESCRIPTION AT-TACHED." Thomas did not immediately record the deed with the Jackson County Recorder of Deeds. However, after learning that Barber was the subject of a criminal investigation, Thomas recorded the deed on May 23, 2005. Thomas also began removing trash from inside the house and cleaning up the yard.

Meanwhile, on April 8, 2005, the circuit court issued an order allowing HRC to enter and temporarily occupy the property in order to assess its condition and prepare a rehabilitation plan. On June 9, 2005, the court approved the rehabilitation plan and entered an order granting HRC temporary possession of the property for the purpose of rehabilitation.

After the temporary possession order was entered, Elbert Harris, the president of HRC, noticed a "For Sale" sign and trash dumpster in front of the property. Harris called the telephone number on the sign and informed the person who answered that the property was involved in a lawsuit. Harris posted a copy of the temporary possession order on the front door of the property and left a note instructing whoever had been working on the property to contact him or the court. Harris eventually spoke with Thomas over ·the telephone, but the two were unable to reach any type of resolution.

In August of 2005, HRC's attorney notified Thomas of a hearing to be held regarding ownership of the property on August 17, 2005. Aware of this impending hearing, Thomas paid $2,917.67 in past due taxes on the property on August 15, 2005. At the August 17 hearing, the circuit court instructed Thomas to stop working on the property and recommended he obtain legal counsel.

Thomas obtained counsel, and, on November 9, 2005, Thomas and Ambassador moved to intervene as defendants in HRC's lawsuit. They sought to rescind the order of temporary possession and dismiss the lawsuit, alleging they held title to the property pursuant to a quitclaim deed from Theresa Nelson and Curtis Laspy. On January 5, 2006, the circuit court granted the motion to intervene. The de-

---

the said party of the first part nor their heirs nor any other person or persons, for Wayne Elliot or in his name or behalf, shall or will hereinafter claim or demand any right or title to the aforesaid premises or any party thereof, but they and each of them shall, by these presents, be excluded and forever barred.

IN WITNESS WHEREOF, the said party of the first part has hereunto set his hand and seal the day and year above written.
Theresa Nelson/s/
Curtis Laspy/s/

fendant-intervenors ("Intervenors") thereafter filed an answer to HRC's petition and counterclaims asserting that the Missouri Abandoned Housing Act violated the Missouri Constitution, U.S. Constitution, and 42 U.S.C. § 1983.

In October 2006, Intervenors moved for summary judgment on their counterclaims or, in the alternative, for judgment on the pleadings. The court denied the motion in December 2006 and further denied all of Intervenors's counterclaims and defenses challenging the constitutionality of the Act.

On January 23, 2008, HRC moved for a court administrator's deed to the property, alleging that rehabilitation had been completed and no claimant with an interest in the property had obtained possession. *See* §§ 447.625.6, 447.640. In response, Intervenors filed a Motion for Restoration of Possession pursuant to Section 447.625.5 and Section 447.638.[3] The motion asserted a claim to restore Ambassador's alleged possession rights as the "owner" of the property and a claim for compensation of the purchase price, property taxes, and maintenance expenses paid by Thomas.

At a hearing on the claim for restoration of possession, the court heard testimony from Thomas, Copley, and Harris. In an order entered December 11, 2008, the court denied the restoration claim, finding Ambassador had "not met its burden" of showing that it owned or had an interest in the property, as required under the Act. The final paragraph of the order also stated: "Karl Thomas and Ambassador Properties have no ownership interest in the subject property."

The court subsequently entered a "Judgment," on April 27, 2009, denying Intervenors's claim for compensation. The judgment also dismissed Intervenors's only remaining counterclaim under 42 U.S.C. § 1983 for lack of standing, based on the earlier finding (in the order dated December 11, 2008) that Ambassador had no ownership interest in the property. The *judgment* further stated: "By granting Plaintiff's Motion for Summary Judgment, the Court had intended to dispose of all issues before the Court."[4]

Intervenors now appeal the judgment denying their claims for possession of the property and compensation. Intervenors also challenge the court's denial of their counterclaims challenging the constitutionality of the Act and alleging a violation of 42 U.S.C. § 1983.

### AUTHORITY FOR APPELLATE REVIEW

Although not raised by the parties, we have a duty to determine *sua sponte* whether we have authority to review an appeal. *See Fischer v. City of Washington*, 55 S.W.3d 372, 377 (Mo.App. 2001). We acquire authority to review a case upon the issuance of a "final judgment" from a court below. § 512.020; Rule 74.01. As a general rule, for the purpose of appeal, a judgment must dispose of all parties and all issues in the case and leave nothing for future determination. *Goodson v. Nat'l Sports & Recreation, Inc.*, 136 S.W.3d 98, 99 (Mo.App.2004). If the trial court's judgment is not final, we lack authority to consider the appeal and must dismiss the appeal. *Fischer*, 55 S.W.3d at 377.

3. Sections 447.625.5 and 447.638 of the Act permit an "owner" to regain possession of an abandoned property by filing a motion instead of a new petition.

4. Other than this reference in the judgment, we find nothing in the record to indicate that the plaintiff, HRC, filed a motion for summary judgment or that such motion was granted.

Rule 74.01(b) provides an exception to this general rule by permitting the trial court to designate as final a judgment "as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." The trial court's certification of a judgment as final is not conclusive because we must independently determine if such judgment actually qualifies as a final judgment. *Fischer*, 55 S.W.3d at 377. In doing so, we look at the judgment's content, substance, and effect. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). "When the trial court resolves all issues and leaves open no remedies as to one of several defendants, the court may certify its judgment as final for purposes of appeal with regard to that defendant." *Crossman v. Yacubovich*, 290 S.W.3d 775, 778 n. 3 (Mo.App.2009).

This case was initially filed by HRC to obtain possession and ownership of the property located at 3120 Cypress Avenue. The circuit court later allowed Thomas and Ambassador to intervene as defendants in HRC's lawsuit and file counterclaims. The circuit court's judgment, dated April 27, 2009, brought final resolution to all of Intervenors's claims and defenses; but HRC's original action against Charles Laspy remains pending. Based on the finding that Intervenors did not meet their burden of proving ownership of the property, the judgment precludes Thomas and Ambassador from any further participation in the case.

Although the judgment does not include a written finding that there is no just reason for delay of an appeal, there are clear indications the circuit court intended to render a final decision on all matters pertaining to the Intervenors. The judgment itself anticipates an immediate appeal in stating that Intervenors "shall not be required to post a bond on appeal."

The judgment also states the court's intention to "dispose of all issues" with regard to Intervenors. As further evidence of such intention, the court advised the parties, during a hearing on September 24, 2009, that an immediate appeal would be appropriate if a determination was made that Intervenors had no ownership interest in the property:

I think everyone is on the same page in saying that—in that if the Court finds that Ambassador has an interest in this property, that we then go forward to deciding whether or not the property should be returned to them as the alleged rightful owner or if they should then be compensated for losses on the property. If Ambassador is determined to be not the rightful owner, then that essentially terminates our discussion here today. And I think everyone then will be in a posture, with the entry of a judgment, to go across the street and appeal the matter.

Given this explanation and the subsequent action taken by the court, the practical effect of the judgment was to resolve all claims and defenses and thereby dispose of all remedies available to Intervenors. The judgment is final for purposes of this appeal by Intervenors. Accordingly, we have authority for appellate review.

STANDARD OF REVIEW

In a court-tried case, we affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "All evidence favorable to the judgment and all inferences to be drawn from the evidence are accepted as true, and all contradictory evidence is disregarded." *Underwood v. Hash*, 67 S.W.3d 770, 774 (Mo.App.2002).

"Credibility of the witnesses and the weight to be given to their testimony is for the trial court, which is free to believe none, part, or all of the testimony of any witness." *Id.* "We may not substitute our judgment for that of the trial court on credibility issues." *Id.*

"Because appellate courts are primarily concerned with the correctness of the result reached by the trial court, we are not bound by its rationale and may affirm the judgment on any grounds sufficient to sustain it." *Russo v. Bruce,* 263 S.W.3d 684, 687 (Mo.App.2008). "Thus, the judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Bus. Men's Assurance Co. of Am. v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999).

## ANALYSIS

### Proof of Ownership Interest

In Point I, Intervenors contend the circuit court erred in denying their claim for possession of 3120 Cypress Avenue based on the finding that they did not have an ownership interest in the property. They assert their ownership was established by the quitclaim deed and that HRC failed to overcome the presumption that the recorded deed was valid. Intervenors argue the court incorrectly placed the burden on them of proving ownership.

In support of their argument, Intervenors cite *Wilkie v. Elmore,* 395 S.W.2d 168, 172 (Mo.1965), a case involving an equitable action to cancel a deed, wherein the court stated:

Cancellation of a deed is the exercise of the most extraordinary power of a court of equity; such power should not be exercised except in clear cases upon proof which is clear, cogent and convinc-

ing, and the burden of such proof is on the party who seeks the cancellation. *Wilkie* is inapplicable in this case, which arises under the Missouri Abandoned Housing Act and is not an action in equity to cancel a deed.

The Missouri Abandoned Housing Act permits qualifying not-for-profit corporations to file a petition seeking temporary possession of abandoned property for the purpose of rehabilitation. §§ 447.622, 447.630. If temporary possession is granted, the Act permits an "owner" of the property to file a motion for restoration of possession. §§ 447.625.5, 447.638. In seeking such relief as an "owner," the movant necessarily has the preliminary burden of demonstrating an ownership interest in the property. Thus, the circuit court did not misapply the law in stating that Intervenors were required to "show they are an 'owner' or have an interest in the property" at 3120 Cypress Avenue.

The court also did not err in finding that Intervenors failed to meet the burden of showing ownership, as there was insufficient evidence of a valid conveyance of the property by quitclaim deed. The acquisition of an interest in real property requires that one be conveyed the interest by another possessing authority to convey the interest. *Celtic Corp. v. Tinnea,* 254 S.W.3d 137, 142 (Mo.App.2008); §§ 442.020, 442.130. A conveyance by a grantor who does not legally possess the interest being conveyed is void. 23 AM. JUR.2D *Deeds* §§ 161, 162 (2002). The recording of a void deed is legally insufficient to transfer or create legal title. *Id.* § 162.

Intervenors contend they obtained an ownership interest in 3120 Cypress Avenue by conveyance of a quitclaim deed from Curtis Laspy and Theresa Nelson. They further assert that Curtis Laspy and Theresa Nelson had authority to convey the property as the sole heirs of Charles

and Louise Laspy, the deceased owners of record. The sole basis for this assertion is the quitclaim deed itself, which, among other recitals, nonsensically states "That the undersigned is the son and daughter of Theresa Nelson and Curtis Laspy," when in fact Theresa Nelson and Curtis Laspy are the only signatories of the deed. The deed also warrants that no person will claim an interest in the property "for Wayne Elliot or in his name or behalf." There is no explanation in the record as to Wayne Elliot's identity or his relationship to the property. Thomas admits that he made handwritten notations on the deed and filled in the name of the grantee[5] several months *after* it was allegedly signed Theresa Nelson and Curtis Laspy. Only Theresa Nelson's signature is notarized. These irregularities raise questions about the accuracy of the information in the deed and its reliability.

There are also questions about how the deed was created and acquired. Thomas said he received the deed from Brent Barber, but he acknowledged he had been "duped" by Barber on previous transactions and that he should have done a title search on the property because there were "red flags." Barber did not testify, and there was no evidence as to how he obtained the deed. Copley testified that he left the unexecuted deed with Curtis Laspy. Copley never met Theresa Nelson and had no knowledge of the circumstances under which the deed was signed or how it eventually landed in the hands Barber and Thomas.

Aside from the deed itself, there was no other evidence to establish that Theresa Nelson and Curtis Laspy were the sole heirs of Charles and Louise Laspy or that

they had authority to convey the property. Intervenors did not offer testimony from Theresa Nelson or Curtis Laspy. Thomas testified that he never met the alleged signatories of the deed, and the record does not indicate that he had any knowledge of the circumstances under which the deed was signed or created.

The fact that Intervenors recorded the quitclaim deed is of no consequence because they failed to show that it was a valid conveyance. In the absence of proof that Theresa Nelson and Curtis Laspy were lawful heirs of the record owners of the property, the record does not establish that they had authority to transfer any interest to Thomas or Ambassador. Thus, we find no error in the circuit court's conclusion that Intervenors did not meet their burden of showing an ownership interest in 3120 Cypress Avenue. The point on appeal is denied.

### Effect of Notice of *Lis Pendens*

In Point II, Intervenors contend the circuit court "erred as a matter of law in ... finding that the filing of a notice of lis pendens by Respondent HRC affected subsequent passage of title from the Laspy heirs to Thomas because under Missouri law the filing of a notice of lis pendens does not prevent passage of title." In support of their argument, Intervenors cite the following finding in the judgment:

Ambassador is not entitled to assert any lien against the property for the purchase price, taxes paid, or improvements made because, when such expenditures were incurred, Ambassador had notice, via the notice of lis pendens, that the property was already subject to an action filed pursuant to the Act. Thus, they incurred the expenses knowing that title

---

5. As noted, the record indicates that the grantee, Ambassador Properties, L.L.C., did not file Articles of Organization with the Missouri Secretary of State until February 24, 2005. Thus, the grantee did not exist as a limited liability company at the time the quitclaim deed was allegedly executed on November 18, 2004.

to the property and rehabilitation was already being pursued by someone else. Intervenors then argue "[t]he logical implication of the court's finding is that once a notice of lis pendens is filed, the property is completely frozen," and assert "[t]here is simply no authority that … a Notice of Lis Pendens prevents the transfer of real property."

This argument either misconstrues or misunderstands the circuit court's findings. The court did not conclude the notice of *lis pendens* prevented the conveyance of 3120 Cypress Avenue to Ambassador. As discussed in Point I, Intervenor's claim for possession of the property was properly denied because they failed to demonstrate an ownership interest. That determination was made without regard for any consideration of the notice of *lis pendens*. The court referred to the notice of *lis pendens* only in considering whether Intervenors could assert an equitable interest in the property and obtain a lien against the property for expenses they incurred. We find no error in the court's determination that Intervenors were not entitled to such lien because they had reasonable notice of HRC's claim on the property before any expenses were incurred. Point II is denied.

## Constitutional Claims

In Points III, IV, V, and VI, Intervenors contend the Missouri Abandoned Housing Act violates substantive due process, procedural due process, the takings clauses, and the public use clauses of the United States Constitution and the Missouri Constitution. In Point VII, they argue that the circuit court erred in dismissing their § 1983 claim, which is based upon these constitutional challenges. Intervenors acknowledge the circuit court did not reach these constitutional challenges on the merits because the court concluded they lacked standing to challenge the constitutionality of the Missouri Abandoned Housing Act. Because each of these points necessarily depends upon whether Intervenors have standing to challenge the constitutionality of the Missouri Abandoned Housing Act, we address these points together.

"Standing requires that a party seeking relief have a legally cognizable interest in the subject matter and … a threatened or actual injury." *E. Mo. Laborers Dist. Council v. St. Louis Cnty.*, 781 S.W.2d 43, 46 (Mo. banc 1989). "Standing requires some justiciable interest in the subject matter of the action susceptible of protection through litigation." *W. Cas. & Sur. Co. v. Kansas City Bank & Trust Co.*, 743 S.W.2d 578, 580 (Mo.App.1988). "Regardless of an action's merits, unless the parties to the action have proper standing, a court may not entertain the action." *E. Mo. Laborers Dist. Council*, 781 S.W.2d at 45–46.

While the question of whether a party has standing is a question of law that we review de novo, we defer to the trial court's factual determinations. *Clifford Hindman Real Estate, Inc. v. City of Jennings*, 283 S.W.3d 804, 806 (Mo.App.2009). When standing turns upon the existence of particular facts, the burden of demonstrating these facts is on the party seeking relief. *Reynolds v. City of Independence*, 693 S.W.2d 129, 132 (Mo.App.1985).

Here, the circuit court determined that Intervenors failed to demonstrate they possess an ownership interest in 3120 Cypress Avenue, a conclusion which we affirmed in Point I. Because Intervenors have not met the threshold requirement of showing ownership of a property affected by the Missouri Abandoned Housing Act, they have also failed to demonstrate that they will be harmed by the Act or that they have any interest that could be pro-

tected by challenging the constitutionality of the Act. Thus, they lack standing to bring any constitutional claims. Points III, IV, V, VI, and VII are denied.

### CONCLUSION

We affirm the circuit court's judgment. HRC's Motion to Take Judicial Notice of federal court documents is denied.

All Concur.