

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| EARLENE CHARLES, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85571 |
| | ) | |
| OAK PARK NEIGHBORHOOD | ) | Opinion filed:  December, 12, 2023 |
| ASSOCIATION, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE J. DALE YOUNGS, JUDGE**

Division One:  Edward R. Ardini, Jr., Presiding Judge,
Anthony Rex Gabbert, Judge and Janet Sutton, Judge

This appeal involves a piece of real property subject to the Missouri Abandoned Housing Act, sections 447.620 to 447.640, RSMo.[1] The Circuit Court of Jackson County (the "trial court") granted Oak Park Neighborhood Association ("Oak Park") temporary possession of the property to rehabilitate it. Earlene Charles ("Charles") intervened, claiming to be the property owner and seeking restoration of possession. After a hearing, the trial court found Charles was the property owner and granted her request for restoration.

---

[1] All statutory references are to RSMo 2016.

Oak Park filed a motion to vacate or amend the judgment, asserting Charles lacked standing to bring her claim because she was not the owner of the property prior to the completion of rehabilitation, as required by section 447.625.5. The trial court agreed with Oak Park and entered an amended judgment vacating and setting aside its previous judgment. The trial court found Charles lacked standing, denied her motion for restoration of possession, entered judgment in favor of Oak Park, and ordered the execution and recording of a Court Administrator's Deed vesting title in the property to Oak Park. Charles appeals. For the reasons stated below, we find this appeal is not moot and affirm the judgment of the trial court.

## Background

The Missouri Abandoned Housing Act (the "Act") is central to this matter, thus we begin with a brief summary of the Act to provide context for the proceedings below. The Act "permits qualifying not-for-profit [organizations] to file a petition seeking temporary possession of abandoned property for the purpose of rehabilitation." *House Rescue Corp. v. Thomas*, 328 S.W.3d 267, 274 (Mo. App. W.D. 2010) (citing §§ 447.622, 447.630). If the organization shows that it has "adequate resources to rehabilitate and thereafter manage the property," "the court shall enter an order approving the rehabilitation plan and granting temporary possession of the property to the organization." §§ 447.630, 447.634.

"If temporary possession is granted, the Act permits an 'owner' of the property to file a motion for restoration of possession." *House Rescue Corp.*, 328 S.W.3d at 274 (citing §§ 447.625.5, 447.638). The requirements relating to such a motion vary depending on

2

whether the property is located in a "home rule city," such as Kansas City.[2] If the property is located in a home rule city, the Act provides that "[t]he owner may file a motion for restoration of possession of the property *prior to the completion of rehabilitation*." § 447.625.5 (emphasis added). In all other cities, section 447.638 controls, and it simply provides that "[t]he owner may petition the circuit court for restoration of possession of the property[.]"

If the court finds that the owner should be restored possession, the court then "determine[s] proper compensation to the organization for its expenditures," and the owner may resume possession of the property after paying this compensation to the organization. § 447.638. If the owner does not regain possession of the property, "the organization may file a petition for judicial deed" and the court may enter an order "granting a quitclaim judicial deed to the organization." § 447.640.

With this law in mind, we turn to the facts of this matter. In April 2019, Oak Park filed a Verified Petition for Temporary Possession of Real Property and Court Administrator's Deed, naming Shawn McGuire ("McGuire") as the defendant. Oak Park asserted that McGuire was the record owner of real property located at 4425 Bellefontaine Avenue, Kansas City, Missouri (the "Property")[3] and the Property met "the conditions to be declared abandoned" under the Act. Oak Park sought temporary possession of the Property to rehabilitate it, and further sought "a Court Administrator's Deed conveying

---

[2] Kansas City is a home rule city. *See City of Kan. City v. Carlson*, 292 S.W.3d 368, 371 (Mo. App. W.D. 2009).

[3] The legal description of the Property is Lot 8, Block 6, Benton Heights.

3

title to the Property upon completion of rehabilitation if no owner of record regains possession pursuant to" the Act.

Oak Park served the petition upon McGuire, who was incarcerated in Nebraska. McGuire did not answer or otherwise respond to the petition, and the trial court entered an interlocutory order of default against him on October 4, 2019.

Oak Park entered into an agreement with a contractor (the "Contractor") to rehabilitate the Property. The agreement provided that the Contractor would be responsible for the "entire cost of repairing the Property" and that Oak Park would "not be responsible for performing or paying for any work." The agreement further provided that "[a]fter the rehabilitation is completed by [the Contractor] and upon transfer of title to Oak Park via a Court Administrator's Deed pursuant to the Abandoned Housing Act, Oak Park will then transfer title to [the Contractor] in consideration for the work performed on the Property."

Oak Park submitted its rehabilitation plan to the trial court, which included an estimated description of the work to be performed. On February 11, 2020, the trial court approved Oak Park's rehabilitation plan and granted it temporary possession of the Property to rehabilitate it.

On November 9, 2020, Charles filed a motion to intervene and suggestions in support.[4] Charles asserted she "took ownership of the property pursuant to [a] quit claim deed" on March 9, 2020, she was "entitled to be restored possession of the Property

_____

[4] Charles states in her brief that she is McGuire's sister. Oak Park asserts in its brief that Charles is McGuire's aunt.

4

pursuant to 447.638 RSMo," and she was prepared to reimburse Oak Park for the costs incurred for the rehabilitation of the Property, which she requested be determined by the trial court. In the March 9, 2020 quitclaim deed (the "First Deed"), McGuire's mother—acting for McGuire under a power of attorney—purported to convey the Property to Charles "for the sum of $0."

The trial court granted Charles's motion to intervene. In February 2021, Charles filed a motion for summary judgment requesting the trial court restore her possession of the Property without any payment to Oak Park, asserting Oak Park had incurred no expenses in rehabilitating the Property.[5] In response—among other arguments—Oak Park asserted that Charles had not established she owned the Property because the power of attorney referenced in the First Deed had not been recorded, nor had it been produced in this action, and thus there was no "proper acknowledgement showing [McGuire's mother] was indeed authorized to convey the property on behalf of" McGuire.

Meanwhile, rehabilitation of the Property was completed on March 31, 2021.

On May 11, 2021, Charles recorded the power of attorney referenced in the First Deed with the Jackson County Recorder of Deeds. Charles also filed the power of attorney with the trial court. Pursuant to the power of attorney, McGuire named his mother as his agent and attorney in fact. The power of attorney did not expressly grant McGuire's mother the power to convey real estate or the power to convey any property as a gift.

---

[5] Also at that time, Charles filed a "Counter Petition for Fraud and Misrepresentation" against Oak Park and two other defendants. The trial court ultimately dismissed Charles's counterpetition and Charles has not appealed that determination. Accordingly, we do not further discuss Charles's counterclaims.

On May 19, 2021, McGuire himself executed a quitclaim deed conveying the Property to Charles for the sum of $10 (the "Second Deed"). The Second Deed was not recorded until December 2021.

In June 2021, Oak Park filed a motion for final judgment, asserting the Property had been rehabilitated and seeking a court order for the issuance and recording of a Court Administrator's Deed vesting title to the Property in Oak Park. Oak Park also moved to dismiss Charles's claim, arguing Charles lacked standing to assert her claim of restoration of property because she was not the owner of the Property. Oak Park asserted that the First Deed was invalid because the power of attorney did not authorize McGuire's mother to convey the Property as a gift.

The trial court set a hearing for December 10, 2021. The day before the hearing, Charles recorded the Second Deed with the Jackson County Recorder of Deeds.

At the hearing, the parties submitted evidence and the trial court heard argument on Oak Park's motion to dismiss and motion for final judgment, and Charles's motion for restoration of possession. At the conclusion of the hearing, the trial court requested the parties submit proposed orders, which both parties did. The proposed order submitted by Oak Park contained the following proposed findings:

- Charles is the owner of record of the Property.

- The Contractor acted as the agent of Oak Park in its rehabilitation of the Property and as Oak Park's agent, the Contractor's expenses were those of Oak Park.

- The value of the repairs, improvements, and management fees made on and to the Property total $105,974.50.

6

Oak Park proposed that the trial court grant Charles's motion for restoration, order she reimburse Oak Park $105,974.50, and permit Charles to resume possession of the Property upon payment of this sum.

On February 4, 2022, the trial court entered judgment granting Charles's motion for restoration of possession. The trial court found that "Oak Park does not dispute [Charles's] right to seek possession of the property," and the only matter for the trial court to determine was whether Oak Park was "entitled to payment by [Charles] of proper compensation under section 447.638 and in what amount." The trial court concluded that Oak Park was not entitled to payment under section 447.638 because Oak Park had not paid, incurred, or advanced any funds for the rehabilitation; instead, the Contractor "performed the work and advanced the expenses associated with it, operating under the expectation set forth by the agreement that—when the rehabilitation was complete and [Oak Park] was ultimately deeded the property—[Oak Park] would then transfer the property to it and it would recover those expenses by reselling the property or leasing it." Thus, the trial court ruled that Charles "may resume possession of the [P]roperty" without paying Oak Park for the rehabilitation.

Oak Park filed a Motion for Reconsideration, Motion to Vacate or Amend the Judgment, and Motion for New Trial. Oak Park sought amendment of the judgment on the ground that Charles lacked standing to recover possession of the Property because section 447.625 applies in home rule cities such as Kansas City; pursuant to section 447.625, an owner may only seek restoration of possession prior to completion of rehabilitation; and

7

Charles did not establish ownership of the Property until December 9, 2021, which was after rehabilitation was complete.

The trial court found this argument "compelling and dispositive," and concluded that Charles lacked standing to bring her claim for restoration of possession:

> The evidence at the December 2021 hearing established that repairs to the Property were completed by March 31, 2021, and title to the Property was not legally passed to [Charles] until well *after* that date. Therefore [Charles] was not the 'owner' of the Property prior to the completion of the rehabilitation, and failed to satisfy the requirements of section 447.625. Accordingly, the Court should have determined that she lacked standing to assert her claim for restoration, but erroneously failed to do so.

The trial court vacated and set aside its previous judgment, denied Charles's claim for restoration of the Property, and ordered that the Court Administrator issue and record a Court Administrator's Deed vesting title to the Property in Oak Park. This amended judgment was entered on May 17, 2022.

The Court Administrator's deed was issued, and on June 2, 2022, Oak Park conveyed the Property to the Contractor via quitclaim deed. On June 7th, the Contractor recorded the deed. On June 28th, Charles—through her counsel—filed with the trial court a "Disclaimer of Interest," in which she stated she had no interest in the Property. On July 18th, CommunityAmerica Credit Union ("Credit Union") recorded a $154,500 Deed of Trust on the Property, listing the Contractor as the "Grantor" and Credit Union as the "Grantee" or "Lender." The Deed of Trust was dated July 14, 2022.

On August 1, 2022, Charles—through new counsel—filed a Notice of Verified Withdrawal of Disclaimer of Interest, in which she stated that her previous counsel filed the Disclaimer of Interest without consulting her and she did not disclaim any interest in

8

the Property. Charles additionally asserted that she had directed her previous counsel to file a notice of appeal, but he did not do so. Also on this date, Charles filed in this Court a motion for leave to file a late notice of appeal pursuant to Rule 81.07.[6] Her motion was granted over Oak Park's objections, one of which was that this appeal was moot. In granting Charles's motion for leave to file a late notice of appeal, this Court noted that it was "not making a determination as to whether the appeal is moot" and directed the parties to include this issue in their briefing on appeal.

## This Appeal Is Not Moot

We first must address Oak Park's claim that this appeal is moot. *See Norton v. McDonald*, 590 S.W.3d 450, 452 (Mo. App. W.D. 2020) ("Mootness is a threshold question to appellate review because it implicates the justiciability of a controversy," and thus we "must consider, either on a party's motion or acting *sua sponte*, whether an appeal is moot."). Oak Park asserts we should "dismiss this appeal as moot because [Charles] cannot obtain relief from any of the parties to this case in that Oak Park transferred title to the property after the deadline for [Charles] to appeal." We disagree.

Oak Park's mootness argument is premised on Rule 52.13(c), or rather, that Rule 52.13(c) does not apply here. Rule 52.13(c) provides that "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action

---

[6] Rule 81.07 provides that "[w]hen an appeal is permitted by law from a judgment in the trial court, but the time prescribed for filing an ordinary notice of appeal with the clerk of the trial court as set forth in Rule 81.04 has expired, a party may seek a special order of the appropriate appellate court permitting a late filing of the notice of appeal." Rule 81.07(a).

9

or joined with the original party." *See also* § 507.100.3 (same); *U.S. Bank Nat'l Ass'n v. Cox*, 341 S.W.3d 846, 851 (Mo. App. W.D. 2011) (Pursuant to Rule 52.13(c), "a transfer of interest after an action has been commenced does not summarily divest the original parties of the right to continue pending litigation." (internal emphasis and marks omitted)).

Oak Park asserts that Rule 52.13(c) does not apply here because that rule only applies to transfers made during the course of litigation, and "Oak Park transferred title to the property after the deadline for [Charles] to appeal." This claim is factually incorrect.

The trial court entered its amended judgment on May 17, 2022. No authorized after-trial motions were filed, thus the judgment became final thirty days later, on June 16, 2022, *see* Rule 81.05(a)(1), and Charles had ten days from that date to file a timely notice of appeal, *see* Rule 81.04(a). Oak Park conveyed its interest in the Property to the Contractor on June 2nd and that deed was recorded on June 7th. Thus, contrary to Oak Park's claim on appeal, Oak Park conveyed its interest in the Property prior to the deadline for Charles to file a timely appeal.

Oak Park's transfer of its interest in the Property—which occurred after entry of the judgment, but prior to the judgment becoming final—did not render this appeal moot. *See A2 Creative Grp., LLC v. Anderson*, 596 S.W.3d 214, 218 n.2 (Mo. App. W.D. 2020) (the defendant's transfer of her interest in the land after entry of judgment and prior to the hearing on the motion to amend the judgment did not render the appeal moot); *Cox*, 341 S.W.3d at 851 (the defendant's assignment of the promissory note and deed of trust after the entry of judgment did not render the appeal moot). Pursuant to Rule 52.13(c), Charles

10

may continue her action against Oak Park, notwithstanding Oak Park's transfer of interest in the Property to the Contractor.[7]

Moreover, although the Contractor conveyed an interest in the Property to Credit Union after Charles's deadline to file a timely appeal lapsed, that transfer did not render Charles's appeal moot either. Rule 81.07 grants "a six-month grace period 'from the date of the final judgment' within which an appellate court may permit a late filing of a notice of appeal." *Lavelock v. Cooper Tire & Rubber Co.*, 169 S.W.3d 865, 866 n.1 (Mo. banc 2005); *see also* Rule 81.07(a). The transfer between the Contractor and Credit Union occurred during this six-month period. Charles was ultimately permitted to proceed with her appeal under Rule 81.07. Thus, we find the transfer from the Contractor to Credit Union effectively occurred during this appeal, and Rule 52.13(c) applies to transfers that occur during the appeal process.[8] *See* Rule 41.01(a)(1) (Rules 41 through 101 shall govern civil

---

[7] In arguing this appeal is moot, Oak Park also relies on *Fields v. Millsap & Singer, P.C.*, a case in which we dismissed an appeal as moot because it was "impossible for us to grant any relief to [the plaintiffs] on their claims for rescission and quiet title." 295 S.W.3d 567, 570 (Mo. App. W.D. 2009). However, we find *Fields* distinguishable because in that case the property interest at issue was not merely transferred, but "extinguished." *Id.*

[8] Pursuant to Rule 52.13, "[t]he remedy for a person who believes he or she has or will be affected by such transfer is . . . to seek substitution and/or joinder of the claimed successor in interest—relief which a court may (or may not) grant in its discretion." *Cox*, 341 S.W.3d at 851; *see also A2 Creative Grp.*, 596 S.W.3d at 218 n.2. No party here has filed a motion pursuant to Rule 52.13 seeking substitution or joinder of any individual or entity claiming to have an interest in the Property. Thus, "[t]he effect of this appeal on the rights of any party to whom [Oak Park] may have transferred [its] property interests is not a matter properly before this Court for discussion, consideration, or determination." *See A2 Creative Grp.*, 596 S.W.3d at 218 n.2 (internal marks omitted).

11

actions in the court of appeals).[9]

For these reasons, we find Charles's appeal is not moot.

## Analysis of Charles's Claims on Appeal

Charles raises two points on appeal: (1) the trial court erred in granting Oak Park's motion to amend the judgment in that the argument Oak Park made in its motion to amend—which ultimately formed the basis of the trial court's ruling—was waived; and (2) the trial court erred in finding Charles lacked standing in that "even if Oak Park is correct that Ms. Charles did not become the legal owner of the Property until December 9, 2021," her "status as a real party in interest at this point related back to her filing her request for restoration in November 2020." Notably, Charles's appeal does not challenge the trial court's conclusion that title to the Property was not effectively transferred to her until after the rehabilitation work was completed.

### *Standard of Review*

"In a court-tried case, we affirm the judgment of the trial court unless there is no substantial evidence to support, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *House Rescue Corp.*, 328 S.W.3d at 273 (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "The party challenging the judgment has the burden of proving error." *Gillespie v. Gillespie*, 659

---

[9] In this manner, the Missouri Rules and Federal Rules differ. The Missouri Rules apply to civil cases in the court of appeals. The Federal Rules of Civil Procedure apply only to civil actions in the district courts, not the courts of appeals. *See* Fed. R. Civ. P. 1; Fed. R. App. P. 1(a). Thus, Oak Park's reliance on Federal Rule of Civil Procedure 25(c)—which Oak Park asserts "is identical to Rule 52.13(c)"—and case law interpreting that rule to apply "only to actions pending in the district courts" is misplaced here.

12

S.W.3d 607, 610 (Mo. App. W.D. 2022). "The question of whether a party has standing is a threshold issue that this Court reviews *de novo.*" *Trenton Farms RE, LLC v. Hickory Neighbors United, Inc.*, 603 S.W.3d 286, 290 (Mo. banc 2020).

*Point I*

In her first point, Charles asserts the trial court "erred in granting Oak Park's motion to amend its judgment to hold Ms. Charles should have sued under § 447.625, R.S.Mo., rather than § 447.638, R.S.Mo., . . . because this misapplied the law, as a trial court cannot grant a post-judgment motion on an argument that has been waived, and Oak Park waived this argument[.]" Charles contends that "an argument that a plaintiff has brought a claim under the wrong statute is a defense of failure to state a claim on which relief can be granted, which is waived if not raised before trial in a motion under Rule 55.27," which Oak Park did not do. Charles also asserts that Oak Park waived the argument raised in its post-judgment motion by submitting a proposed order requesting that the trial court find Charles was the owner of the Property and restore the Property to her. However, we find no merit to these contentions, as Charles has mischaracterized the issue presented to and decided by the trial court.

Contrary to Charles's claim on appeal, Oak Park did not argue—nor did the trial court find—that Charles failed to state a claim upon which relief could be granted because she proceeded under the wrong statute. Rather, Oak Park argued and the trial court found that, at the time she moved for restoration of the Property, Charles had no ownership interest in the property, and thus she lacked standing. Although on appeal Charles attempts to frame the trial court's decision as one that does not involve standing—perhaps because

13

a "[l]ack of standing cannot be waived," *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002)—we are unpersuaded, and find the issue before the trial court involved Charles's standing.

"Standing asks whether the persons seeking relief have the right to do so." *State ex rel. Deutsche Bank Nat'l Trust Co. v. Chamberlain*, 372 S.W.3d 24, 29 (Mo. App. W.D. 2012) (internal marks omitted). "Litigation of a claim requires plaintiffs to show that they have standing by demonstrating a personal interest in the litigation arising from a threatened or actual injury." *Mo. Coal. for Env't v. State*, 579 S.W.3d 924, 926 (Mo. banc 2019) (quoting *St. Louis Cty. v. State*, 424 S.W.3d 450, 453 (Mo. banc 2014)). "Although standing can be based on an interest that is 'attenuated, slight or remote,' in all cases there must be a showing of an actual personal interest or stake in the outcome of the litigation." *St. Louis Cty.*, 424 S.W.3d at 453 (citing *Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 438 (Mo. banc 2013)). "Whether a party has an interest, or standing, in the litigation depends upon whether that party is in immediate danger of sustaining a direct, threatened or actual injury." *Graves v. Mo. Dep't of Corr.*, 630 S.W.3d 769, 777 n.8 (Mo. banc 2021). A right to seek relief may be statutorily conferred, and in such circumstances "the 'standing' to seek relief[] is defined by statute." *Chamberlain*, 372 S.W.3d at 29; *see also Goser v. Boyer*, 633 S.W.3d 482, 486 n.4 (Mo. App. E.D. 2021) ("whether a party has standing under a particular statute to bring a particular cause of action is . . . a matter of justiciability").

The Act permits an owner to seek restoration of possession of the property if the court has granted temporary possession to a qualifying organization. *See* §§ 447.625.5,

14

447.638. In seeking relief under either section, the person claiming ownership has the "preliminary burden" of demonstrating she is entitled to file the motion. *See House Rescue Corp.*, 328 S.W.3d at 274 ("In seeking such relief as an 'owner,' the movant necessarily has the preliminary burden of demonstrating an ownership interest in the property."). We have described this preliminary burden as a "threshold requirement," and have concluded that if the movant fails to meet this threshold requirement, she lacks standing to bring claims related to the Act. *Id.* at 276-77 (finding the movants lacked standing to bring their constitutional claims when they did not meet "the threshold requirement of showing ownership of a property affected by the Missouri Abandoned Housing Act").

Although Charles moved to intervene and sought restoration of the Property pursuant to section 447.638, section 447.625 applied because the Property was located in Kansas City, which is a "home rule city." *See* § 447.625.1 ("Any petition filed under the provisions of section 447.620 to 447.640 which pertains to property located within any home rule city shall meet the requirements of this section."); *see also City of Kan. City v. Carlson*, 292 S.W.3d 368, 371 (Mo. App. W.D. 2009) (Kansas City is a home rule city). Section 447.625.5 permits an "owner" to file a motion for restoration of possession "prior to the completion of rehabilitation." Thus, to have standing under section 447.625.5 to seek restoration, the movant must establish the threshold requirement of ownership prior to the completion of rehabilitation.

Here, at the time the rehabilitation work was completed, Charles was not the owner of the Property, and thus she had no "actual personal interest or stake in the outcome of the litigation," and she was not "in immediate danger of sustaining a direct, threatened or actual

15

injury" if Oak Park were granted a Court Administrator's Deed. The fact that a relative was threatened with the loss of an interest in real property owned by that relative conferred no standing *on Charles*.

To that end, the trial court determined Charles lacked standing because she did not establish ownership prior to the completion of rehabilitation. The trial court found that the rehabilitation of the Property was "completed by March 31, 2021, and title to the Property was not legally passed to [Charles] until well *after* that date." Contrary to Charles's claim on appeal, this was a determination as to her standing. Indeed, the trial court expressly found that in its previous judgment it "should have determined that [Charles] lacked standing to assert her claim for restoration, but erroneously failed to do so."

Because the trial court granted Oak Park's motion to amend the judgment based on Charles's lack of standing, we find no merit to Charles's claim on appeal that the trial court erred by granting a post-judgment motion on an argument that was waived. "Standing cannot be waived, may be raised at any time by the parties, and may even be addressed *sua sponte* by the trial court or an appellate court." *Cook v. Cook*, 143 S.W.3d 709, 711 (Mo. App. W.D. 2004). Accordingly, Oak Park did not—and could not—waive its argument that Charles lacked standing. And even if Oak Park had never raised the issue, the trial court could have examined the issue of Charles's standing *sua sponte*. *See Cook*, 143 S.W.3d at 711.

Charles attempts to avoid this result by arguing that "Section 447.625.5's time bar is not an element of standing," and that the Act's "only prerequisite to standing for a party wishing to be restored possession is ownership." Charles asserts "[a] statutory time bar

16

such as § 447.625.5 does not affect a party's legal right to seek relief," but rather is akin to a statute of limitations, and a defense based on statute of limitations can be waived. We disagree, and find the time requirement in section 447.625.5 is a prerequisite to standing.

As described above, an individual moving for restoration pursuant to section 447.625.5 bears the burden of demonstrating that she meets the statute's threshold requirements and thus is entitled to relief. A statute of limitations, on the other hand, is an affirmative defense that "seeks to defeat or avoid a plaintiff's cause of action, and alleges that even if plaintiff's petition is true, plaintiff cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility." *Templeton v. Cambiano*, 558 S.W.3d 101, 104 (Mo. App. W.D. 2018) (internal marks omitted)); *see also* Rule 55.08. The *defendant* bears the burden of establishing that the statute of limitations bars the plaintiff's claim. *English ex rel. Davis v. Hershewe*, 312 S.W.3d 402, 407 (Mo. App. S.D. 2010) ("Because the statute of limitations is an affirmative defense asserted by Defendants, they bear the burden of establishing that the statute bars [Plaintiff's] claims."). Thus, the timing requirement in section 447.625.5 does not operate akin to a statute of limitations; rather, the movant seeking restoration of the property must affirmatively establish that she falls within the temporal requirement in order to be entitled to relief, which is a hallmark of standing, not a statute of limitations defense.

For these reasons, we find no merit to the claim of error Charles asserts in this point. Point I is denied.

17

*Point II*

In her second point, Charles asserts the trial court "erred in holding [she] lacked standing to seek restoration of the Property" based on the finding that she "was not the owner of the Property at the time she filed her request for restoration." Charles contends that "under Rules 52.01, 52.06, and 55.33(c), when a party lacks standing to sue at the time she filed her request for relief because she was not then the real party in interest, but then becomes the real party in interest before trial, her status relates back to the filing of her request and she has standing to sue." She contends, as a result, "even if Oak Park is correct that [she] did not become the legal owner of the Property until December 9, 2021, this was before trial, and Ms. Charles's status as a real party in interest at this point related back to her filing her request for restoration in November 2020, which was before the date the trial court found rehabilitation of the Property was complete, and so was timely." We disagree.

Rules 52.01, 52.06, and 55.33(c) do not operate here as Charles contends. Rule 52.01 requires a civil action to be prosecuted in the name of the real party in interest. Rule 52.06 holds that misjoinder of parties is not a ground for dismissal of the action. Rule 55.33(c)—titled "Relation Back of Amendments"—provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Charles asserts that pursuant to these Rules, when she gained ownership of the Property she became a "real party in interest," and her status as a "real party in interest" related back to her November 2020 request for restoration.

18

Contrary to Charles's claim, Rule 55.33(c) is inapplicable here. This Rule allows an "amendment" to a pleading to relate back to an earlier pleading, and here there was no amended pleading or equivalent amendment to relate back to Charles's original request for restoration. More importantly, however, standing cannot "relate back" under Rule 55.33(c) to cure a standing defect that existed at the time the action was initiated. *See Chastain v. James*, 463 S.W.3d 811, 826 (Mo. App. W.D. 2015) ("An amendment will relate back to the original petition so as to save the action from the statute of limitations only when the original plaintiff had the legal right to sue and stated a cause of action at the time the suit was filed."); *see also Don Roth Dev. Co., Inc. v. Mo. Highway & Transp. Comm'n*, 668 S.W.2d 177, 179 (Mo. App. E.D. 1984) (amended petition adding landowner as a plaintiff did not relate back to the original petition where the original plaintiff had no interest in the land and no right to assert the owner's claim). It is undisputed in this appeal that Charles did not own the Property when she filed her request for restoration or at any time prior to the completion of rehabilitation. Thus, any ownership interest she acquired later cannot "relate back" to provide her the standing she lacked to bring her restoration claim.

In arguing that her status as a "real party in interest" related back to her request for restoration, Charles appears to confuse the issues of capacity to sue and standing. *See In Their Representative Capacity as Trustees for Indian Springs Owners v. Greeves*, 277 S.W.3d 793, 797-98 (Mo. App. E.D. 2009) (while the "issue of capacity to sue may be confused with the issue of standing to sue," they are two separate concepts). "Capacity to sue refers to the status of a person or group as an entity that can sue or be sued[.]" *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 193 (Mo. banc 2006). The cases Charles

19

relies upon to argue that her status as a "real party in interest" relates back to her request for restoration involved plaintiffs that lacked capacity to sue when they filed wrongful death actions, the plaintiffs sought to substitute for themselves plaintiffs that had the capacity to sue, and the Missouri Supreme Court held that the substitutions related back to the original petitions. *See, e.g.*, *Thorson v. Connelly*, 248 S.W.3d 592, 596 (Mo. banc 2008) (the appointment of the original plaintiff "to act formally as plaintiff *ad litem* is in effect an amendment to the pleadings because it is the substitution of the plaintiff suing in the proper capacity," and "[h]er appointment as plaintiff *ad litem* will relate back to the date she filed suit" (internal marks omitted)); *Slater v. Kan. City Terminal Ry. Co.*, 271 S.W.2d 581, 583 (Mo. 1954) ("The substitution by amendment was a mere change in the capacity in which plaintiff sued," and "the amendment should be held to have related back to the time of the filing of the original petition.").

Here, however, Charles did not alter the capacity through which she was suing; rather, she materially changed the allegation on which she relied to prove ownership. A change in allegation regarding her ownership interest is wholly different than substitution of parties. Whether or not Charles had ownership of the Property, she was always suing on her own behalf and there was never an issue with Charles's capacity to sue. Accordingly, we find the wrongful death cases cited by Charles do not support her claim that an ownership interest she gained after the Property was rehabilitated relates back to provide standing for her request for restoration.

For these reasons, we find the trial court did not err in determining Charles lacked standing to seek restoration of the Property.

Point II is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

21